**EAST LAKE PARTNERS, a Delaware limited partnership, Appellant,**

v.

**The CITY OF DOVER PLANNING COMMISSION and John G. Davis, Roy Bogus, Michael Ambruso, William J. DiMondi, John Friedman, Clarence Wallace Hicks, Thomas Hold, Ann M. Baker Horsey, Rexene A. Ornauer, Appellees.**

Civ. A. No. 94A–02–003.

Superior Court of Delaware, Kent County.

Submitted: July 27, 1994.

Decided: Oct. 31, 1994.

John E. O'Brien of Dodge & O'Brien, P.A., Dover, for appellant.

Nicholas Rodriguez of Schmittinger & Rodriguez, Dover, for appellees.

## OPINION

TERRY, Resident Judge.

This matter comes before the Court on a writ of certiorari to the City of Dover Planning Commission which denied approval of a site plan submitted by East Lake Partners for the proposed development of a tract of land. The Superior Court has jurisdiction to review the Planning Commission's actions for the purpose of determining whether, on the face of the record, it exceeded its powers or failed to conform to the requirements of the law. *Delaware Barrel & Drum Co., Inc., v. Mayor and Council of the City of Wilming-*

*ton,* Del.Super., 54 Del. 205, 175 A.2d 403 (1961).

According to the record sent up from the Planning Commission, East Lake Partners owns a rectangular tract of 5.27 acres of undeveloped land facing on a residential roadway called Lakeview Drive which in turn intersects with Route 13 several hundred feet easterly from the tract. Lakeview Drive is one of several streets located in a residential area of predominately single family homes adjacent to the tract. Vehicles going to and from the existing residences as well as from the tract, if it is developed, would access Route 13, which is a dual highway, from Lakeview Drive at an intersection controlled by a traffic light.

The undeveloped tract is zoned RG–2 which is a residential zone permitting multi-family dwellings such as apartments. There is one existing apartment complex adjacent to the tract on the south with its own entrance way to Route 13 as well as another apartment complex in the northerly part of the adjacent residential area. East Lake Gardens originally submitted a site plan for a five building complex of 108 apartment units which the Planning Commission refused to approve for reasons relating to traffic impact, non-compliance with a woodland ordinance and emergency accessibility. A revised site plan was then submitted for a down scaled project of two apartment buildings of 48 units.

The procedure for site plan approval requires that a plan first be reviewed by the Development Advisory Committee ("DAC") which checks for compliance with existing ordinances and which makes recommendations for the imposition of conditions to be imposed on site plan approval. In this case the DAC concluded that the site plan conformed to all of the applicable zoning ordinances and it recommended that if approval were to be granted certain conditions be attached relating to on site construction and development.

After the DAC review, the site plan was the subject of a public hearing before the Dover Planning Commission where a number of residents from the neighborhood were heard in opposition to the project. A fair summary of the testimony is that the objectors feared the project would generate additional traffic which would increase the number of accidents at the intersection of Lakeview Drive with Route 13; that traffic would be delayed when trying to enter Route 13 from Lakeview Drive; that the addition of an extra turn lane to be made at the intersection would unfairly eliminate parking at a commercial establishment fronting on Route 13 where the owners are currently using undeveloped highway right of way for parking; and that the existing residential properties would be generally inconvenienced by increased traffic.

The Planning Commission refused to approve the site development plan for the following reasons:

1. One hundred and thirty nine residents petitioned for denial;

2. The extra traffic which would result would inconvenience the residents of the area;

3. Concern over limited access to the rear of the proposed buildings for fire department access which could hinder response time;

4. The existing business on the corner of US Route 13 and Lakeview Drive may experience a loss in business and off-street parking;

5. The possibility of 808 vehicle crossings at the intersection of US Route 13 and Lakeview Drive;

6. Concern over the safety of the residents entering and exiting at US Route 13.

*I*

When a municipality acts to determine the zoning classification of land and thereby determines the type of uses to which land may be put, it acts in a legislative capacity and its action will be upheld by the Court if the evidence upon which the zoning classification is based is fairly debatable. A zoning decision will be overturned only if the municipality's action is arbitrary and capricious. *Willdel Realty, Inc. v. New Castle County,* Del.Supr., 281 A.2d 612 (1971).

In this case, the City of Dover has already exercised its legislative function by choosing to zone the tract RG–2 and therefore it has already established apartments as a permitted use.

The RG–2 zoning portion of the code [1] requires site development plan approval prior to the issuance of building permits for the erection of structures in that zone, and the City of Dover Planning Commission is the entity charged with reviewing and approving site development plans. Its powers are expressly stated at Article 10 § 2.1 and 2.2 of the Dover City code in these words:

2.1 Site development plan approval shall be required for the erection or enlargement of all structures and the establishment of any use for which site development plan approval is required by this ordinance.

2.2 *Objectives.* In considering and acting upon site development plans, the public health, safety and welfare, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular, shall be taken into consideration and appropriate conditions and safeguards may be prescribed as may be required that the results of its action may, to the maximum extent possible, further the expressed intent of this ordinance and the accomplishment of the following objectives in particular:

2.21 Maximum safety and convenience of vehicular and pedestrian traffic by insuring that all driveways and walkways are adequate but not excessive in number, adequate in width, grade, alignment, and visibility; and suitably located, particularly with respect to their connections with public streets.

2.22 The provision of adequate access to all proposed structures, equipment, or material on the site for fire and police protection.

2.23 The provision of adequate off-street parking to accommodate the vehicles of persons connected with or visiting the use and to obviate the parking of such vehicles in public streets.

2.24 A site layout (including the location, power, direction, and time of any outdoor lighting of the site) which would have no adverse effect upon adjacent properties.

2.25 Landscaping of the site in a manner which is in character with that generally prevailing in the neighborhood and which provides reasonable screening, at all seasons of the year, of all playgrounds, parking areas, and service areas from the view of adjacent residential properties and streets.

2.26 In applicable cases, a drainage system and layout which would afford the best solution to any drainage problems.

■ It is apparent from a reading of Article 10 §§ 2.1 and 2.2 that the Commission's review of a site plan for the development of a parcel of land in accordance with a permitted use is limited to a consideration of what conditions and safeguards might reasonably be imposed on the plan in order to further the intent of the ordinance and the accomplishment of the six enumerated objectives. It is in the context of imposing conditions that the Planning Commission is entitled to consider "the public health, safety and welfare, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular." It is significant, also, that when applying conditions, the object is to further the intent of the ordinance and the accomplishment of the six objectives "to the maximum extent possible", not to absolute perfection.

■ Thus, the role of the Planning Commission is to review site development plans and require changes and conditions so that the end result, to the maximum extent possible, will achieve the general intent of the zoning ordinance which is in part "to provide for the orderly and desirable development and use of land" [2] and to accomplish the specified six objectives, all of which involve on-site considerations. Specifically, in Article 10, 2.21 deals with on site driveways and walkways; § 2.22 deals with fire and police access to structures, equipment or material

1. Article 2 § 1.3

2. Article 1 § 2.

on the site; § 2.23 deals with off street parking on the site; § 2.24 deals with a site layout designed so as to have no adverse effect on adjacent properties; § 2.25 deals with landscaping the site; and § 2.26 deals with the on-site drainage system.

■ When the Dover Planning Commission acts on a site plan, its role is limited to applying the powers delegated to it by the code. *Kauffman v. Planning and Zoning Commission,* 171 W.Va. 174, 298 S.E.2d 148, 152 (1982). When a site plan is in compliance with all of the provisions of the zoning ordinance regarding use and dimensional requirements, the Commission has the further right to scrutinize the layout of the project as depicted on the site plan and attach conditions to the on-site layout so as to minimize any adverse impact on the adjoining property owners and the general public. In particular it must consider the six factors specifically listed in the ordinance.

■ When it performs this task, the Planning Commission does not act in a legislative capacity but acts partly in a ministerial and partly in a quasi-judicial capacity. Therefore, the standard of review on appeal is not whether the Commission's action was fairly debatable, as with a legislative decision, but whether there is substantial evidence to support the Planning Commission's findings of fact and whether the Planning Commission exceeded its powers as a matter of law. *Janaman v. New Castle County Board of Adjustment,* Del.Super., 364 A.2d 1241 (1976), *aff'd,* Del.Supr., 379 A.2d 1118 (1977). Also see *Herr v. Lancaster County Planning Commission,* 155 Pa.Cmwlth. 379, 625 A.2d 164 (1993).

## II

The Planning Commission rejected the site plan for six reasons which I will consider in respect to both the evidence in the record and the jurisdiction of the Commission.

■ The fact that one hundred and thirty nine residents petitioned for denial is not a valid basis to reject a site plan. While the desires of the public in respect to uses are pertinent to the zoning of land when the initial uses for land are established, *Sears v. Levy Court of Kent County,* Del.Ch., C.A. NO. 465K, Berger, V.C., 1986 WL 10085 (September 15, 1986), such evidence is not pertinent to site plan review, except insofar as it is limited to proposed conditions and safeguards to be imposed on the plan itself. In other words, the Planning Commission has no power to reject a site plan because the residents do not want the land used for a project that is a permitted use under the applicable zoning classification. See, e.g., *Pinnacle Woods Survival Game v. Hambden Township Zoning Inspector,* 33 Ohio App.3d 139, 514 N.E.2d 906, 908 (1986) ("The objections of a large number of residents of the affected area is not a sound basis for the denial of the permit.") An acceptance of this principle would confer on the Planning Commission the power to effectively rezone the land in question.

■ The Commission also denied the site plan for reasons relating to traffic. It commented on the resulting extra traffic which would inconvenience the residents of the area, the possibility of 808 vehicles crossing at the intersection of U.S. Route 13 and Lakeview Drive, and concern over the safety of the residents entering and exiting at U.S. Route 13. These reasons have nothing to do with the six specific objectives set out in the ordinance since they all relate to parking and roadways on site and where they connect to public streets such as Lakeview Drive. A landowner has a right of reasonable access to a public road which abuts his land. *State of Delaware v. 14.69 Acres of Land,* Del.Supr., 226 A.2d 828, 831 (1967). There is no evidence in the record that the layout of the roads on the site or where they connect to Lakeview Drive do not comply with applicable ordinances and regulations or that they are otherwise inadequate, dangerous or adverse to the public health, safety and welfare. The real complaint is that with the erection of apartments, more vehicles will travel Lakeview Drive and use its intersection with U.S. Route 13. There was testimony in the record from individuals that this would create delays at the light and would increase the risk of accidents at U.S. Route 13. On the other hand, the Delaware Department of Transportation did a traffic study and report-

ed that with the agreed addition of a separate right turn lane and the agreed downsizing of the project, the intersection could handle the increased traffic. Thus, there is no evidence that the intersection at Lakeview Drive cannot accommodate the increased traffic, but only evidence that increased traffic might increase delays in getting through the intersection at Route 13 and might increase the risk of accidents on a busy stretch of Route 13.

The Planning Commission takes the position that it can consider this evidence in the context of the language dealing with the overall intent of the Dover zoning ordinance to provide for the orderly and desirable development of land as well as the language at Article 10 § 2.2 of the site plan ordinance where the Commission is told to consider "the public health, safety and welfare, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular" when acting upon site plans. It then says that the Planning Commission can completely reject a site plan and on appeal, its decision can only be reversed if it is found to have been arbitrary and capricious. In other words, the Planning Commission contends that it has the power to completely reject a site plan for a project that complies with the zoning ordinance if it is fairly debatable that the project would adversely impact the public health, safety, welfare, comfort and convenience of the neighborhood.

■ The Planning Commission may not reject a site plan for a permitted use on the grounds that the project will adversely effect the general neighborhood. When people purchase land zoned for a specific use, they are entitled to rely on the fact that they can implement that use provided the project complies with all of the specific criteria found in the ordinances and subject to reasonable conditions which the Planning Commission may impose in order to minimize any adverse impact on nearby landowners and residents. To hold otherwise would subject a purchaser of land zoned for a specific use to the future whim or caprice of the Commission by clothing it with the ability to impose ad hoc requirements on the use of land not specified anywhere in the ordinances. The result would be the imposition of uncertainty on all landowners respecting whether they can safely rely on the permitted uses conferred on their land under the zoning ordinances.

Although there appears to be no Delaware case on point there is authority in other jurisdictions. The Planning Commission in Kirkwood, Missouri rejected a site development plan which met the requirements of the applicable ordinances because in its opinion it was not compatible with the character of the neighborhood. In that case the Commission relied on language in the code's preamble which reserved to it the discretion to provide for the public health, safety, convenience and general welfare.

■ The Missouri Court of Appeals reversed and held that a Planning Commission cannot rely on general language to effectively rezone property by denying subdivision approval, because such a power would enable it to "hold in reserve unpublished requirements capable of general application for occasional use as the Commission deems desirable". Subdivision regulations must not be too general and must contain known and fixed standards that apply to all similar cases. *State ex rel. Schaefer v. Cleveland,* Mo.App., 847 S.W.2d 867 (1992).

In *Southern Co-op Development Fund v. Driggers,* 11th Cir., 696 F.2d 1347 (1983) a subdivision plan was rejected after public opposition for the reason that although it complied with all of the zoning ordinances the Commission felt that the connecting county road was in a deteriorating and unsafe condition. The Court refused to vest the Commission with wide discretion to reject plans on the basis of language in the ordinance giving it discretion to provide for the public health, safety and welfare. Instead the Court held that at the plan approval state uniform, ascertainable standards must be applied to all. As the West Virginia Supreme Court said in *Kauffman v. The Planning and Zoning Commission of the City of Fairmont,* 171 W.Va. 174, 298 S.E.2d 148 (1982):

A subdivision regulation enacted by a planning commission must be reasonable and

the regulation must sufficiently restrain the discretion of the commission to insure fair administration and must sufficiently inform the property owner to insure adequate guidance in the preparation of plans.

 Thus, the Planning Commission had no power to reject the site plan on the basis of a general power to provide for the health, welfare, safety and convenience of the neighborhood where to do so would completely deny a use permitted under the zoning ordinance.

The Commission cites *Southland Corp. 7– Eleven Stores v. Mayor and City Council of Laurel,* 75 Md.App. 375, 541 A.2d 653 (1988) where a planning commission rejected a site plan for a convenience store on a commercially zoned lot because it would create a traffic hazard. However, in that instance, the ordinance specifically delegated to the Commission the power to consider whether the location of a proposed use would create a public safety hazard. In our case, the Dover Planning Commission has no such specific delegation but only a broad mandate to consider the public health, safety, welfare, comfort and convenience in relation to the imposition of conditions to be attached to a plan.

The record does not contain any substantial evidence with respect to traffic impact as it relates to the site plan which would justify the rejection of the site plan by the Dover Planning Commission.

▪ The Commission also refused to approve the site plan because of concern over limited access to the rear of the proposed buildings for fire department access which could hinder response time. The fire department recommended that the landowner negotiate an agreement with the owner of the existing apartment complex adjacent to and south of the site to install gates in the chain link fence separating the two properties so that in the event of a fire, the fire department could drive fire trucks through the existing apartment complex into the back of the East Lake Partner's property. The adjoining owner would not agree to the installation of gates. However, the representative of the fire department testified at the hearing that the absence of gates was not signifi-cant because in the event of a fire the department could easily cut its way through the fence. The question of gates was primarily to prevent destruction of part of the fence. Thus, there is no substantial evidence in respect to fire access upon which site plan denial can rest.

▪ Finally, the Commission denied the plan because the existing commercial establishment on the corner of US Route 13 and Lakeview Drive may experience a loss in business and off street parking. Apparently the Commission felt that the business owner was currently using part of the public right of way for parking and the installation of a turn lane on the unused part of the right of way would eliminate this. Nowhere in the ordinance is the Commission given the power to deny site plan approval for such a reason.

### III. CONCLUSION

The decision of the City of Dover Planning Commission to deny approval of the site plan submitted by East Lake Partners in this case is *REVERSED.*