TONY ASHBURN & SON, INC.,
Appellant Below, Appellant,

v.

KENT COUNTY REGIONAL PLAN-
NING COMMISSION, an agency of
the government of Kent County, Dela-
ware; Albert Holmes, Jr., Ken Ed-
wards, Denise Kaercher, Bill Jester,
Gene Thornton, Paul Davis and Clif-
ton Coleman, Jr., individually and in
their official capacities as members of
the Kent County Regional Planning
Commission; Kent County Levy
Court, the governing body of Kent
County, Delaware; P. Brooks Banta,
Allan F. Angel, Bradley S. Eaby, Eric
L. Buckson, W.G. Edmanson II, Ha-
rold K. Brode and Richard E. Ennis,
individually and in their official ca-
pacities as members of the Kent
County Levy Court, Appellees Below,
Appellees.

No. 68, 2008.

Supreme Court of Delaware.

Submitted: Oct. 8, 2008.

Decided: Dec. 5, 2008.

**236**

Richard A. Forsten (argued) and Jennifer M. Becnel–Guzzo, Esquires, of Buchanan Ingersoll & Rooney, P.C., Wilmington, DE, for Appellant.

Jos. Scott Shannon, Esquire (argued) of Marshall Dennehey Warner Coleman & Goggin, Wilmington, DE, for Appellees.

Lisa B. Goodman and William E. Gamgort, Esquires, of Young Conaway Stargatt & Taylor, L.L.P., Wilmington, DE; Pamela J. Scott, Esquire, of Saul Ewing, L.L.P., Wilmington, DE, for Amici Curiae The Committee of 100, Delaware Contractor's Association, Delawareans for Environmental and Economic Development, American Council of Engineering Companies—Delaware, Delaware Bankers Association, Delaware State Chamber of Commerce and Associated Builders and Contractors, Delaware Chapter, Inc.

Douglas M. Hershman and Scott G. Wilcox, Esquires of Bayard, P.A.; Of Counsel: Christopher M. Whitcomb, Esquire, National Association of Home Builders, Washington, DC, for Amici Curiae National Association of Homebuilders and Homebuilders Association of Delaware.

Before HOLLAND, BERGER, JACOBS and RIDGELY, Justices, and PARSONS, Vice Chancellor,[1] constituting the Court en Banc.

JACOBS, Justice, for the Majority:

Tony Ashburn & Son, Inc. ("Ashburn"), appeals from a Superior Court judgment affirming a decision of the Kent County Regional Planning Commission ("Commission") denying Ashburn's application for subdivision approval. On appeal, Ashburn argues that the Superior Court erroneously upheld the Commission's decision, which was contrary to law and not based on substantial evidence. Because we conclude that the Commission acted contrary to law and reverse on that ground, we do not reach Ashburn's alternative claim that the Commission's decision lacked evidentiary support.

### FACTUAL AND PROCEDURAL BACKGROUND [2]

Ashburn owns 254.33 +/− acres of land (the "property") located in an unincorpo-

---

1. Designated pursuant to Art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

2. The facts are summarized from the Superior Court decision. *Tony Ashburn & Son, Inc. v. Kent County Reg'l Planning Comm'n* (Del.Super.January 30, 2008) C.A. No. 07A–05–001.

rated area of Kent County, Delaware. On July 27, 2006, Ashburn filed an Application for Subdivision Plan Approval ("application")[3] with the Kent County Department of Planning Services (the "Planning Office") to subdivide the property in order to develop a single family residential subdivision (the "subdivision"). The property is zoned Agricultural Conservation ("AC"), which permits the development of single family houses at a density of up to one unit per acre. Ashburn's proposed subdivision would consist of 214 lots with a density of .84 units per acre and would be served by an on-site water and septic system provided by private utilities. It is undisputed that Ashburn's application complied with all applicable planning and zoning requirements.

On September 7, 2006 the Planning Office, having concluded that the application complied with the Kent County Comprehensive Plan and Zoning District Provisions, recommended approval of the application, subject to certain recommendations. On that same day, the Commission held a public hearing,[4] at which Ashburn presented testimony that the proposed subdivision complied with State and County criteria for protecting the health, safety and welfare of Kent County residents. Several residents testified against the application, arguing that the subdivision was outside the so-called Growth Zone,[5] and would cause the schools to become overcrowded and

would unduly increase the traffic in the area.

The Commission solicited comments from various state agencies about the impact of Ashburn's proposed development. That took place as part of the Preliminary Land Use Service process ("PLUS Review").[6] The Office of State Planning Coordination ("OSPC") filed comments with the Commission, emphasizing that the proposed development was located in an "Investment Level 4" area, in which the State will only support agricultural preservation, natural resource protection, and continuation of the rural nature of that area. New development in an Investment Level 4 area is not supported. OSPC further claimed that development of Ashburn's site would be inappropriate, because the cost to the State of providing services in the area would be wasteful and inefficient, there being no existing plan to invest in infrastructure in the area aside from necessary maintenance.

Other state agencies made similar comments. The Department of Transportation ("DelDOT") announced that the State planned to maintain only existing transportation in the area, and that DelDOT wished to avoid creating isolated areas that could not be effectively or efficiently served by public services. The Department of Natural Resources and Environmental Control ("DNREC") took the position that granting Ashburn's subdivision would interfere with DNREC's preservation goals, because the subdivision would

---

3. Application No. SL–06–15.

4. Pursuant to 9 *Del. C.* § 4908.

5. *See* Kent County Code ("KCC") § 205–397.2(A), which provides:
   (1) The Growth Zone Overlay District encompasses an area that Kent County has determined new development should be encouraged. To that end, incentives ... are provided to encourage development within

the zone rather than in the more rural areas of the County.
(2) The Growth Zone Overlay District is an area identified by Kent County where infrastructure such as water, sewer, and transportation facilities exists or is planned to serve development.

6. Pursuant to 29 *Del. C.* § 9201 *et seq.*

sit atop a groundwater recharge area and create water drainage problems. The Department of Agriculture also voiced opposition to the plan, as did the Smyrna School District, which stated that it did not have the capacity to absorb the additional students who would move into new developments in Kent County.

On September 14, 2006, the Commission voted to deny Ashburn's application, citing three reasons: (1) the infrastructure was not in place, (2) the property was outside the Growth Zone, and (3) the application would negatively affect the health, safety and welfare of the community. The Commission based its denial on the comments it had received from the PLUS Review and from the aforementioned state agencies.

On September 19, 2006, Ashburn appealed the Commission's decision to the Kent County Levy Court.[7] Before the Levy Court, the Commission argued that: (1) 9 Del. C. § 4961[8] required rejection of the application because of concerns voiced by the local school district regarding school capacity; (2) increased traffic on neighboring roads would create a safety hazard; and (3) the water supply in the area would be negatively impacted. After a hearing, the Levy Court upheld the Commission's denial of Ashburn's subdivision application, based on the opposition of the state agencies that had previously submitted comments on Ashburn's application.

Ashburn then appealed to the Superior Court, claiming that as a matter of law the Commission lacked the power to reject a subdivision application that complied with all applicable Kent County Subdivision and Zoning Code requirements. Ashburn argued that: (1) the Commission exceeded its powers as a matter of law; (2) preliminary site plans that comply with all applicable subdivision code provisions are entitled to approval; and (3) the Commission's reasons for denying Ashburn's application were both inappropriate and inadequate to support the denial. Additionally, Ashburn argued that (4) the Levy Court erred in relying solely on 9 Del. C. § 4961[9] as the statutory basis for upholding the Commission's decision.

The Superior Court concluded that the Commission is vested with discretion under both the Delaware and Kent County Codes to ensure that land development proceeds in a manner consistent with the Kent County Comprehensive Plan,[10] the County Zoning Code, and the Delaware Code. The Superior Court concluded that a subdivision application that complies with the subdivision code is not automatically entitled to approval, and that the Commission has discretion to deny even a conforming application. Reviewing the Commission's denial of Ashburn's application

---

7.  Pursuant to KCC § 187–21(D).

8.  9 Del. C. § 4961 requires that the County request information from state agencies when considering rezoning and subdivision plans. That statute requires the County to explain in writing any recommendations in conflict with the information provided by state agencies.

9.  The Quality of Life Act of 1988 (codified at 9 Del. C. § 4961 et seq.) relevantly provides that the Commission "shall request and review information from all state and local agencies." See 9 Del. C. § 4961(b).

10.  9 Del. C. § 4953 requires the County "[t]o adopt and amend comprehensive plans ... to guide their future development and growth."

   The Kent County Comprehensive Plan is "[a] general plan to control and direct the use and development of property ... by dividing it into districts according to present and potential use of the properties." KCC § 205–6.
   The Kent County Comprehensive Plan is prepared and revised by the Levy Court following the same procedure for adopting County Ordinances. KCC § 73–1, 73–3.

for abuse of discretion, the Superior Court concluded that the record before the Levy Court provided ample basis to support the Commission's denial. Accordingly, the Court affirmed the decision of the Levy Court.

Ashburn timely appealed to this Court. On June 13, 2006, while this appeal was pending, Kent County introduced ordinances amending its County Code. Those amendments created specific, mandatory standards relating to traffic, schools, emergency services and water that must be satisfied in order for a subdivision plan to be approved. The ordinances relating to traffic and school capacity were adopted on March 27, 2007 with an effective date retroactive to the date of their introduction (June 13, 2006). Under these new ordinances, a subdivision plan similar to Ashburn's would no longer comply with the Kent County Code.

### ANALYSIS

■ On appeal, Ashburn reiterates the claims of error it advanced to the Superior Court. On appeal from a Superior Court decision reviewing a decision and order of an administrative agency on the record, this Court reviews the decision of the administrative agency for abuse of discretion.[11] Where, as here, a County planning commission considers an application to approve a subdivision plan, it does not act in a legislative capacity but "partly in a ministerial and partly in a judicial capaci-

ty."[12] We review administrative agency decisions to determine whether the decision is supported by substantial evidence and is free from legal error.[13] Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14] We review questions of law, including the interpretation of a statute, de novo.[15]

### I. The Commission Lacked the Power to Deny a Legally Conforming Subdivision Plan

■ The central dispute on this appeal concerns the scope of the Commission's discretion to approve or disapprove a subdivision application. Because "subdivision control involves the specific application of the applicable general standards to the particular facts of a proposed subdivision,"[16] the Commission has quasi-judicial power. The Commission does not exist "merely to rubberstamp every application that comes before it."[17] Most certainly it has a measure of discretion.[18] Ashburn claims, however, that under the statutory scheme in existence at the time its subdivision plan was rejected, the Commission lacked the power to deny a subdivision plan that complied legally with all applicable zoning and subdivision requirements.

The Commission responds that 9 Del. C. § 4961 commands that the Commission consult with other state agencies when considering a subdivision application.

---

**11.** *Public Water Supply Co. v. DiPasquale*, 735 A.2d 378, 380 (Del.1999).

**12.** *East Lake Partners v. City of Dover Planning Comm'n*, 655 A.2d 821, 825 (Del.Super.1994).

**13.** *DiPasquale*, 735 A.2d at 381.

**14.** *Opportunity Center, Inc. v. Jamison*, 2007 WL 3262211, at *3 (Del. May 24, 2007).

**15.** *Levan v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del.2007).

**16.** *JNK, LLC v. Kent County Reg'l Planning Comm'n*, 2007 WL 1653508, at *4. (Del.Super. May 9, 2007) quoting 5 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 90:5.

**17.** *Id.*

**18.** *Id.*

Moreover, in cases where the relevant state agencies present compelling reasons to deny the subdivision application, the Commission has discretion to deny even a fully conforming subdivision plan.

9 *Del. C.* § 4811 empowers the Commission to "approve, approve with conditions, disapprove or table" a subdivision application. That statute grants the Commission discretion when determining the proper disposition of a subdivision application. The scope of the Commission's discretion is not explicit from the face of that statute. Ashburn claims that the fact that the General Assembly has empowered the Commission to approve a subdivision application "with conditions," evidences the legislature's intent to prohibit the Commission from denying an application based upon the information it receives regarding the future impact of a proposed development.

The Commission relies upon 9 *Del. C.* § 4802 to support its claim that its discretion is much broader, and includes the power to deny a conforming application based on concerns presented by other agencies. That statute describes the Commission's purpose as being to:

[P]romot[e] health, safety, prosperity and general welfare, as well as for the purpose of securing coordinated plans for roads, airways, railways, public buildings, parks, playgrounds, civic centers, airports, commercial, industrial and residential developments, water supplies, sewers and sewage disposal, drainage and other improvements and utilities ... as well as for the purpose of preventing the unnecessary duplication of such improvements or utilities....

Additionally, the Commission relies on 9 *Del. C.* § 4961(b), which states:

As part of its review of ... subdivision application[s], the county government through its designated local planning agency shall request and review information from all state and local agencies and local school districts ... and shall file as part of the record any written information provided by such state and local agencies or local school districts with respect to the ... subdivision application.

Based on these two statutory provisions, the Commission argues that its discretion includes the power to deny a subdivision application based on concerns relating to the health, safety and welfare of the community, even if the application otherwise complies with all State and County Code requirements.

■ The issue is whether the Commission's argued-for statutory interpretation is correct. "An ambiguous statute should be construed 'in a way that will promote its apparent purpose and harmonize it with other statutes' within the statutory scheme."[19] The Commission here claims statutory authority to deny applications based on comments from state agencies that implicate the health, welfare and safety of the community. But, the very statutes upon which the Commission relies provide only that the Commission *consider* that information. The statutes do not, either expressly or by implication, give the Commission unfettered discretion to deny an otherwise legally conforming subdivision application based on impact-related concerns expressed by commenting state agencies.

The provisions in force at the time Ashburn's application was considered do sup-

19. *Le Van v. Independence Mall, Inc.,* 940 A.2d at 932–33 citing *Eliason v. Englehart,* 733 A.2d 944, 946 (Del.1999).

port the view that the Commission may consider non-Code factors (such as comments by other state agencies) to inform Commission approval of a conforming subdivision application "with conditions." Those provisions do not, however, support a conclusion that such factors establish grounds to deny a subdivision application that otherwise fully conforms to all applicable Zoning and Subdivision Code provisions.

Delaware case law supports this conclusion. In *DiFrancesco v. Mayor and Town Council of Elsmere*, a local planning commission argued that "it has the power to completely reject a site plan for a project that complies with the zoning ordinance if it is fairly debatable that the project would adversely impact the public health, safety, welfare, comfort, and convenience of the neighborhood." [20] That argument was essentially the same as that being advanced by the Commission here, and the *DiFrancesco* court rejected it, stating:

> When people purchase land zoned for a specific use, they are entitled to rely on the fact that they can implement that use provided the project complies with all of the specific criteria found in ordinances and subject to reasonable conditions which the Planning Commission may impose in order to minimize any adverse impact on nearby landowners and residents. To hold otherwise would subject a purchaser of land zoned for a specific use to the future whim or caprice of the Commission by clothing it with the ability to impose ad hoc requirements on the use of land not specified anywhere in the ordinances. The

result would be the imposition of uncertainty on all landowners respecting whether they can safely rely on the permitted uses conferred on their land under the zoning ordinances. [21]

The reasoning of *DiFrancesco* is persuasive and we adopt it here. If the Commission is empowered to deny proposals that meet all applicable statutory and Code criteria, purchasers of land would be left unable to predict whether they can develop their land in accordance with the pertinent zoning ordinances, or whether instead the County may prevent development based upon non-Code related *ad hoc* determinations. Here, Ashburn purchased land zoned AC, a classification that permits the kind of subdivision development that Ashburn was proposing. Upholding a denial of Ashburn's plan even though it complied with all Kent County Code criteria, would upset Ashburn's reasonable development expectations when it purchased the land for development.

Similarly, in *JNK, LLC v. Kent County Regional Planning Commission* a land owner submitted to the Commission a plan to subdivide property that, like Ashburn's property, was zoned AC and fell outside the Growth Zone. [22] The Commission denied the application based on infrastructure, health, safety, and welfare concerns. [23] Moreover, the Commission did not identify any aspect of the application that failed to conform to the requirements in the County Code. The Superior Court initially remanded the case to the Commission so that "the Commission can make its determination based on the subdivision regula-

---

20. *DiFrancesco v. Mayor and Town Council of Elsmere*, 2007 WL 1874761, at *3 (Del.Super. June 28, 2007) (citing *East Lake Partners v. City of Dover Planning Comm'n*, 655 A.2d 821, 825 (Del.Super.1994)), *aff'd* 947 A.2d 1122 (Del.2008).

21. *Id.* at *3.

22. *JNK, LLC v. Kent County Reg'l Planning Comm'n*, 2007 WL 1653508, at *1 (Del.Super. May 9, 2007).

23. *Id.* at *6.

tions, the zoning regulations and any other pertinent regulations contained within the KCC." [24] After the case returned to the Superior Court, the court instructed the Commission as follows:

> (1) [I]f the Commission finds that all the regulations are complied with, the plan is approved; (2) if the Commission finds that all the regulations are complied with, but the Commission has some concerns it desires to condition final plan approval on, the approval is made contingent on the completion of those requirements; (3) if the Commission finds that some regulation is not complied with, the plan is denied; or (4) if the Commission finds that in order to determine if the regulations have been complied with more information is required, the plan is tabled until the information has been provided. [25]

That court's instruction was legally correct.

The dissent implies that our interpretation of 9 *Del. C.* § 4811 reduces the Commission to conducting a mere compliance check of a subdivision application to verify conformity with the County Code. This mischaracterizes our position. To summarize, the Commission may condition its approval of Ashburn's subdivision application based on non-Code factors, such as agency recommendations, school capacity issues, and concerns regarding the health, safety and welfare of the community. The Com-

mission may consider these issues and has discretion in formulating conditions on approval designed to harmonize and coordinate regional planning. But, the Commission's power to impose conditions cannot be administratively enlarged to a power to deny a conforming application outright. [26] In this case the Commission did not approve the application with conditions. Therefore, in denying Ashburn's application, which fully complied with all provisions of the Kent County Code, the Commission exceeded its statutory power.

Because we conclude that the Superior Court and the Commission legally erred for the reasons stated above, we do not reach the issue of whether the Commission had substantial evidence to support its decision.

## II. The Amendments to the County Code Do Not Apply to Ashburn's Proposal

■ The remaining issue concerns the effect, if any, of the Kent County Code amendment enacted while this appeal was pending. To reiterate, on June 13, 2006, Kent County proposed ordinances to amend the County Code in a manner that would essentially foreclose future subdivision developments similar to that proposed by Ashburn. The proposed ordinances relating to traffic and school capacity were adopted on March 27, 2007, with an effective date retroactive to their introduction. These ordinances (known as the "Adequate

---

24. *Id.* at *8.

25. *JNK, LLC v. Kent County Reg'l Planning Comm'n*, 2007 WL 2319471, at *2 (Del.Super. July 11, 2007).

26. The dissent seeks to distinguish *JNK* by characterizing the decision in that case as based on the lack of evidence in the record to support a denial. The dissent argues that the *JNK* court's reversal was not based on the Commission's lack of power to deny an otherwise conforming application. When recon-

sidering the case, however, the court stated: "[if] the Commission has some concerns ... approval is made contingent on ... those requirements; ... if the Commission finds that some regulation is not complied with, the plan is denied." *JNK, LLC v. Kent County Reg'l Planning Comm'n*, 2007 WL 2319471, at *2. The *JNK* court properly interpreted 9 *Del C.* § 4811 as requiring the Commission to place conditions on conforming applications that it had concerns with, but not permitting an outright denial of such applications.

Public Facilities Ordinances") *do not* apply to Ashburn's proposal, however. The amendment, KCC § 187–90.2(E)(2), provides:

> This section applies to all applications for major subdivision, conditional use site plans and site plan review for new construction filed after the effective date of this section. (underlining added)

The effective date of the new ordinance was June 13, 2006. Ashburn's proposal was filed March 2, 2006, over three months earlier. Accordingly, the new ordinances are inapplicable to Ashburn's subdivision proposal.

### *CONCLUSION*

For the foregoing reasons, the judgment of the Superior Court is reversed with instructions to remand the case to the Commission to reconsider Ashburn's subdivision application in a manner consistent with this Opinion.

RIDGELY, Justice, dissenting:

The majority correctly recognizes that the Kent County Regional Planning Commission is vested with quasi-judicial power to review Ashburn's subdivision application. In 9 *Del. C.* § 4811, the General Assembly expressly authorized the Regional Planning Commission of Kent County (the "Commission") to "approve, approve with conditions, *disapprove* or table" a subdivision application.[27] By holding that the Commission may not reject Ashburn's subdivision application, the majority incorrectly deprives the Commission of the power the General Assembly conferred upon it to "disapprove" an application that

fails to coordinate with regional planning in Kent County.

"For the purpose of promoting health, safety, prosperity and general welfare," the General Assembly required that Kent County establish a Regional Planning Commission.[28] The Commission must review and approve all subdivision plans before they are recorded.[29] The Commission is specifically charged with securing "coordinated plans for roads ... commercial, industrial and residential developments, water supplies, sewers and sewage disposal, drainage and other improvements and utilities...."[30]

In carrying out its function, the Commission is not constrained in its review of the submitted subdivision application to a mere compliance check with the Kent County subdivision ordinance. Instead, it is expressly "empowered to act in conjunction and cooperation with representatives, agencies, or officers of the United States government, this State, any other state, or any county, city or town within or without this State."[31] This cooperation is *mandatory*.[32] By enacting the statute and ordinance, State and local governments have placed each property owner on notice that coordination with plans for roads, other developments and utilities is a condition for any subdivision approval. Specifically, "[a]s part of its review of a rezoning or subdivision application, the county government through its designated planning agency *shall* request and review information for all state and local agencies and local school districts.... If the planning agency makes recommendations that are

27. 9 *Del. C.* § 4811 (emphasis added).

28. 9 *Del. C.* §§ 4802, 4803.

29. 9 *Del. C.* §§ 4810, 4811.

30. 9 *Del. C.* § 4802.

31. 9 *Del. C.* § 4813(b).

32. 9 *Del. C.* §§ 4819, 4961. 9 *Del. C.* Ch. 49 provides zoning statutes specific to Kent County.

in conflict with the information supplied by state and local agencies or local school districts, *it must explain its reasons for doing so in writing."*[33]

Under this statutory scheme, it is the Commission which enforces coordinated regional planning.[34] The statutory charge of the Commission is frustrated if the Commission must approve a subdivision application regardless of any objections made before it relating to the matters that all are on notice that it must consider under § 4802.

The cases relied upon by the majority are either distinguishable or support the Commission's position. *DiFrancesco v. Mayor and Town Council of Elsmere*[35] is distinguishable because it involved the planning commission of an incorporated town in New Castle County. *DiFrancesco* involved a statutory framework different from 9 *Del. C.* Chs. 48 and 49. *JNK, LLC v. Kent County Regional Planning Commission*[36] supports the Commission's argument that it has quasi-judicial authority to apply general standards to the particular facts of a proposed subdivision. The Superior Court's reversal in *JNK* was not because of a lack of power to disapprove a subdivision application. Rather, it was due to the lack of any reference to specific facts or legal provisions that would allow the court to determine whether substantial evidence existed on the record to support the Commission's findings of fact and conclusions of law.[37]

There is substantial evidence in the record before us to support the Commission's findings that 1) infrastructure is not in place to support this subdivision, 2) the subdivision is outside the Kent County Growth Zone, and 3) the subdivision would adversely affect the health, safety and welfare of the community, especially the Amish community. The evidence before the Commission demonstrated that the proposed subdivision plan does not coordinate with the plans of the state, county or school district which the Commission was required to consider. In my view, the Commission's denial of the subdivision application was a proper exercise of the limited discretion expressly conferred upon it by the General Assembly.

I respectfully dissent.

**33.** 9 *Del. C.* § 4961(b) (emphasis added).

**34.** *See* 9 *Del. C.* §§ 4802, 4813, 4819, 4961.

**35.** 2007 WL 1874761 (Del.Super. June 28, 2007), *aff'd* 947 A.2d 1122 (Del.2008).

**36.** 2007 WL 1653508 (Del.Super. May 9, 2007); 2007 WL 2319471 (Del.Super. July 11, 2007).

