# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SMOKEY HOLLOW, LLC, | ) | |
| | ) | C.A. No. S24A-09-001 CAK |
| Petitioner, | ) | |
| | ) | CERTIORARI |
| v. | ) | |
| | ) | |
| SUSSEX COUNTY | ) | |
| PLANNING & ZONING | ) | |
| COMMISSION, | ) | |
| | ) | |
| Respondent. | ) | |

Submitted: September 15, 2025
Decided: October 1, 2025

*Upon Petitioner's Petition for Writ of Certiorari*
*Seeking Review of Respondent's Decision*

Decision **REVERSED**

## MEMORANDUM OPINION AND ORDER

Richard A. Forsten, Esquire, Jennifer M. Becnel-Guzzo, Esquire, Mackenzie M. Peet, Esquire, SAUL EWING LLP, 1201 N. Market St., Suite 2300, Wilmington, Delaware 19801, Attorneys for Petitioner.

David N. Rutt, Esquire, Moore & Rutt, P.A., 122 W. Market Street Georgetown, Delaware 19947, Attorney for Respondent.

**KARSNITZ, R. J.**

# INTRODUCTION

American legal and political thought has always valued giving landowners freedom to use their property as they see fit. As congestion has increased, zoning regulations have limited landowners' freedom. A compelling limitation on land use regulation requires clear and specific designation of what is allowed and what is prohibited.[1] This clear and specific rule allows fairness to landowners so that they know their rights in advance of purchase or development.

In the case before me, the County, through Respondent, argues that, even if a plan for development meets all requirements, it may still limit the development by applying a number of general, if admirable, goals.[2] By way of example, one goal is to limit the effect of the plan on local school districts. At oral argument on the Petition, in response to a hypothetical question as to whether it could limit to 40 lots a development which the Code permitted 60 lots, in order to ameliorate any effect on schools, Respondent answered yes. Other similar general guidelines allow consideration of environmental effects.

---

[1] *Jack Lingo Asset Management, LLC v. Board of Adjustment of City of Rehoboth Beach*, 282 A.3d 29 (2022).

[2] The Sussex County Code provides that, when the Commission considers approval of a plan, it shall include consideration of other provisions within [the Code] as well as specific criteria under Section 99-9(C) including the following (stating those applicable to this Petition): (1) integration of the proposed subdivision into existing terrain and surrounding landscape, (2) minimal use of wetlands and floodplains, (3) preservation of natural and historic features, (5) minimization of tree, vegetation and soil removal and grade changes, (10) minimization of erosion and sedimentation … , minimization of potential for flooding, and (16) compatibility with other area land uses.

Respondent suggests legal authority for its position in *Tony Ashburn & Son, Inc. v. Kent County Regional Planning Comm'n*.[3] In that case, our Supreme Court reasserted the right of landowners to get approval of plans which meet the Code provisions, *subject to* conditions imposed to minimize any adverse impact on nearby landowners. The latter proviso creates an opening in the rights of landowners with complying plans. While I will have more to say about this opening below, Respondent seeks to drive a truck through the hole to justify any additional limitations. For me Respondent's position proves too much. Accepting its position would provide it limitless discretion and power to shape land developments well beyond the written Sussex County Code. It would also fly in the face of the requirement that landowners be put on written notice in advance of what is allowed.

This case juxtaposes the ability of Petitioner to develop a Sussex County subdivision in compliance with applicable Sussex County Code and Ordinances against the ability of Respondent to impose reasonable conditions on such development. As discussed above, our Supreme Court has said:

> When people [own] land zoned for a specific use, they are entitled to rely on the fact that they can implement that use *provided the project complies with all of the specific criteria found in ordinances* and subject to *reasonable conditions which the Planning Commission may impose in order to minimize any adverse impact on nearby landowners and residents.* To hold otherwise would subject a purchaser of land zoned for a specific use to the future whim or caprice of the Commission by

---

[3] 962 A.2d 235, 241 (Del. 2008) (*en banc*).

clothing it with the ability to impose *ad hoc* requirements on the use of land not specified anywhere in the ordinances. The result would be the imposition of uncertainty on all landowners respecting whether they can safely rely on the permitted uses conferred on their land under the zoning ordinances.[4] [Emphasis supplied.]

On the other hand, a recent decision of this Court affirmed the power of the Sussex County Council, and by extension Respondent, to impose conditions and even deny a zoning application which failed to meet those conditions.[5] At issue was whether the Commission could deny the zoning application which the developer demonstrated met all County ordinance criteria. The Commission denied the application finding there were deficiencies in the application with respect to conditions not specifically stated in the County Code. The Court found the Commission had the authority to grant conditional approval and, in that case, to deny the application. The Court gave broad deference to the County. The Order was appealed to the Delaware Supreme Court, and the developer argued on appeal that the plan met all requirements and should be approved because the conditions cited to deny the application were not specifically set out in the County Code. The Supreme Court affirmed this Court's decision in a one sentence order.[6] The developer sought reargument by the Court *en banc*, which the Supreme Court

---

[4] *Ashburn* at 241.
[5] *Stillwater Harbor, LLC v. Sussex County Planning & Zoning Commission, et al.*, C.A. No. S23A-11-001-MHC (Order dated Aug. 8, 2024).
[6] Supreme Court Order No. 356, 2024, dated April 9, 2025.

denied.

In my view, *Stillwater* is not helpful to Respondent. That case dealt with *denial* of a plan for failure to comply with the Code, primarily because of flooding at a nearby intersection, and this Court held that the Commission had identified plan deficiencies that justified denial. In the instant case there is no assertion that the plan did not comply with the Code or was otherwise deficient. The three-justice Supreme Court panel affirmed for the reasons set forth in this Court's opinion and did not write its own opinion. Its affirmance in *Stillwater* did not reverse or modify its *en banc* opinion in *Ashburn*. To me, if the Supreme Court had intended to overrule *Ashburn* it would have done so expressly. Thus, *Ashburn* still guides me as to what conditions Respondent may impose on a *conforming* plan, which are limited to those designed "to minimize any adverse impact on nearby landowners and residents."

I am left with the quandary: where along the spectrum of "reasonable conditions" which the County may impose do the two conditions which Respondent seeks to impose fall? Are they designed to minimize any adverse impact on nearby landowners and residents?

### FACTUAL AND PROCEDURAL BACKGROUND

Smokey Hollow, LLC ("Petitioner") is the owner of a 66-acre parcel of land (the "Property") upon which it proposes an 82-lot residential subdivision ("Smokey Hollow") using Sussex County's cluster option. There is no dispute that the

5

preliminary subdivision plan (the "Preliminary Plan" or "Plan") complies with all the applicable zoning and subdivision requirements. There will be approximately 40 acres of open space. In fact, the Plan is less dense than the Sussex County Code otherwise allows.[7]

Petitioner submitted its initial application on October 27, 2022. Following extensive review by the Sussex County Planning & Zoning Office, as well as review by numerous other state agencies, Petitioner submitted the Plan on March 8, 2024. Respondent held a public hearing on March 20, 2024. During the public hearing, one nearby homeowner and seven homeowners from the adjoining residential subdivision, "Fox Haven," appeared, and six complained that they felt that Lot 64 in Smokey Hollow would be too close to their residential lots.[8] The recorded Fox Haven subdivision plan shows that these six lots are set back the required 30 feet from the Fox Haven/Smokey Hollow boundary.[9] Similarly, the Plan shows that Smokey Hollow Lot 64 is set back the required 30 feet from the Fox Haven/Smokey Hollow boundary.[10] One of the Fox Haven residents speaking against the Plan conceded that Lot 64

---

[7] The Property is zoned GR General Residential under the County Code, which permits a maximum density of 2 single-family homes per acre. See County Code, §§115-42, 115-194.3(C)(3). Petitioner's Plan has a density of 1.2 homes per acre.

[8] Two of the speakers were husband and wife and own the same lot in Fox Haven, and the lot of one of the other speakers does not border Smokey Hollow.

[9] Sussex County Recorder of Deeds' Office at Document# 2020000018512, Book 310, beginning at page 45.

[10] The County Code requires a 30' forested and/or landscaped buffer located along the entire outer perimeter of any portion of a major subdivision. County Code, §99- 5; see also County Code §§115-125F, 115-194.3(C)(5). All lots must be set back at least 30' from the edge of the subdivision boundary.

complied with the Code, but that she wanted the applicable setback distance doubled.[11]

Following the March 20, 2024, public hearing, the Commission voted to grant preliminary plan approval at its next regular business meeting on April 10, 2024. In its Notice of Decision Letter for the Preliminary Subdivision Plan for Smokey Hollow, dated April 12, 2024 (the "Decision"), the Commission imposed 19 conditions, most of were not objectionable to Petitioner and which are not at issue in this litigation. However, Petitioner objected to Condition A, which required the elimination of Lot 64, thereby reducing the size of the proposed subdivision from 82 lots to 81 lots; and Condition O, which required a *fixed* minimum buffer of 25 feet from all non-tidal wetlands.[12]

With respect to Condition A, Petitioner argues that Lot 64 complies with the 30-foot setback requirement of the Code and there is no authority for removal of an otherwise compliant lot. With respect to Condition O, Petitioner argues that the Code provisions which were in effect when the initial application was submitted required no such buffer, and after the Plan was submitted, County Council adopted an ordinance creating a more flexible buffer requirement, which ordinance requires an *average* buffer of 30 feet and specifically exempts pending plans such as Smokey

---

[11] See 3/20/24 transcript at 187 (appearing in the record at B410) (cited portions of transcript attached as Ex. B) ("I know there's a 30-foot buffer – we would like a 50- to 60-foot buffer.").
[12] This 25' fixed buffer imposed would result in the loss of 8 lots, but the 30' average buffer requirement could be met with no loss of lots.

Hollow.[13]

Nonetheless, Petitioner revised the Plan and requested reconsideration of the two conditions. With respect to the requirement to eliminate Lot 64, Petitioner offered to set the lot back further than the 30-foot required setback, to 100 feet. As to the buffer requirement, Petitioner agreed to comply with the recent Ordinance 2852, even though that ordinance did not apply to Smokey Hollow.[14]

Petitioner asserts the effect of the conditions on the Plan. Obviously, it would lose Lot 64. The buffer requirement, according to Petitioner, would cause the loss of eight additional lots. At oral argument, Respondent claimed that this loss was not in the record. That claim, to me, comes without good grace, as Respondent had closed the record. It matters not as the buffer requirement has at least at a minimum some detrimental effect on Petitioner's development.

Respondent rejected Petitioner's request at its August 21, 2024, meeting, and memorialized this denial in an August 29, 2024, letter from the Sussex County Planning & Zoning Office. Petitioner then filed its Petition for Writ of Certiorari on September 19, 2024. Respondent filed its Response to Petition for Writ of Certiorari

---

[13] Sussex County Council adopted Ordinance 2852 requiring an average buffer of 30' from non-tidal wetlands for lots in a residential subdivision. This ordinance became effective on November 17, 2022. Council, in adopting this ordinance, did not require a fixed minimum distance for all lots, rather, it recognized that there must be some flexibility given the topography of different properties, and so mandated only a minimum average buffer.

[14] It is undisputed that Petitioner will have to obtain a federal permit from the Army Corps of Engineers to fill a relatively small area of non-tidal wetlands in Smokey Hollow, and Delaware law does not prohibit the filling of wetlands.

on October 22, 2024. On October 23, 2024, I found that the Petition could proceed and ordered Respondent to file the record, which Respondent filed on November 25, 2024. Petitioner filed its Opening Brief on January 23, 2025. On February 20, 2025, Respondent filed a Motion to Dismiss for Petitioner's failure to appeal Respondent's denial to the Sussex County Council, but Respondent withdrew that Motion on March 14, 2025. Respondent filed its Answering Brief on February 20, 2025. Petitioner filed its Reply Brief on March 21, 2025. On May 12, 2025, I cancelled oral argument, which was scheduled for May 14, 2025, and ordered supplemental briefing from both parties. Respondent's Supplemental Brief was filed on June 13, 2025, and Petitioner's Supplemental Brief was filed on July 11, 2025. I held oral argument on September 15, 2025. This is my decision.

## STANDARD OF REVIEW

This appeal is brought by writ of certiorari, as there is no direct right of appeal provided in Title 9 of the Delaware Code. Subdivision plan decisions are ordinarily reviewed by certiorari.[15] The Delaware Supreme Court has explained certiorari review as follows:

> A writ of certiorari "invokes one of the oldest common law writs," and "its origins are obscure in the history of medieval England...." The purpose of the writ is to permit a higher court to review the conduct of a lower tribunal of record. Review on certiorari is not the

---

[15] See, e.g., *Ocean Bay Mart, Inc. v. City of Rehoboth Beach*, 2019 WL 1126351 (Del. Super. March 12, 2019); *Cave v. New Castle County Council*, 850 A.2d 1128 (Del. Super. June 9, 2004); *East Lake Partners v. City of Dover Planning Comm'n*, 655 A.2d 821 (Del. Super. Oct. 31, 1994).

same as review on appeal because review on certiorari is on the record and the reviewing court may not weigh evidence or review the lower tribunal's factual findings. The reviewing court does not consider the case on its merits; rather, it considers the record to determine whether the lower tribunal exceeded its jurisdiction, committed errors of law, or proceeded irregularly… A decision will be reversed for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has "proceeded illegally or manifestly contrary to law."[16]

This Court has stated that it "shall uphold the decision of the lower tribunal unless the petitioner can demonstrate that the decision was arbitrary or unreasonable on its face."[17] Consequently, I have not weighed evidence or reviewed Respondent's factual findings. Rather, I have considered only the record provided to me to determine whether Respondent committed errors of law, and whether the Decision was unreasonable, with respect to the two conditions at issue. As discussed below, even giving deference to Respondent to impose reasonable conditions, I find that Respondent committed errors of law, and that two conditions of the Decision were unreasonable. Therefore, I reverse the Decision as to those two conditions.

## ANALYSIS

As discussed above, under *Ashburn*, if Petitioner's Plan complies with the "specific criteria" of the County Code, it is entitled to approval subject only to

---

[16] *Christiana Town Center, LLC v. New Castle County*, 865 A.2d 521 (Del. 2004) (Table) (text available in Westlaw, 2004 WL 2921830) (citations omitted).

[17] *Dorsey v. AKA Mgmt.*, 2024 WL 1173609, at *2 (Del. Super. Mar. 18, 2024) (internal citation omitted).

reasonable conditions designed to minimize any adverse impact on nearby landowners and residents. While I am aware of no Delaware case that has opined on what constitutes a "reasonable" condition, the Court's own language in *Ashburn* provides some guidance. For example, if shifting an entrance to a project in one direction or another could easily be accomplished, so that the entrance might be further from a neighboring project but still provide safe and adequate access to the proposed project, this would be a reasonable condition because it minimizes any adverse impact on nearby landowners and residents. If the location of a stormwater pond and a parking lot could be changed so that a parking lot would be further from an adjoining property, that would be a reasonable condition because it minimizes any adverse impact on nearby landowners and residents. Requiring a berm or landscaping in an otherwise open buffer area would be a reasonable condition because it minimizes any adverse impact on nearby landowners and residents.

As the Court of Chancery has stated:

> The law requires that local governments deal with specific land use decisions in a *rational, non-arbitrary manner guided by legislative standards of general application*. The *singling out of particular owners for idiosyncratic treatment, just because the prevailing neighborhood wind is unfavorable,* is not acceptable when the property owner has met all the criteria that the local government has established.[18] [Emphasis supplied]

Thus, the question is: do Condition A and Condition O exceed the legislative

---

[18] *Gibson v. Sussex Cnty. Council*, 877 A.2d 54, 79 (Del.Ch. 2005).

standards of general application enacted by the Sussex County Council, and impose idiosyncratic conditions, beyond what Council required, on particular owners just because the prevailing neighborhood wind is unfavorable?

**Condition A -- Lot 64**

There are several single-family residential lots in the adjacent Fox Haven subdivision which adjoin proposed Lot 64 in the Smokey Hollow subdivision. At the public hearing, six Fox Haven lot owners objected to only one of the lots proposed -- Lot 64 -- because, they claimed, even though it complied with the Code requirements, they felt it would still be too close to their own lots. However, Lot 64 complies with the "specific criteria" of the Code; specifically, all residential lots in a residential subdivision must be set back 30 feet from the property boundary of the residential subdivision.[19] The rear property line of any lot must be 30 feet from the property line of the subdivision. This has the effect of creating a 30-foot buffer of open space and landscaping, maintained by the homeowners' association, around any residential subdivision, and a total distance of 60 feet from any lot in an adjoining subdivision. Indeed, in creating this 30-foot setback requirement, County Council made the legislative determination that 60 feet between the rear lot lines of lots in two adjoining subdivisions was a sufficient and appropriate distance between such lots. As explained in *Gibson*, when considering land use requirements, County

---

[19] County Code, Ch. 115, Zoning, Attachment 1, Table 1, note 8.

Council must address [land use policies] in a legislative fashion and not in an arbitrary fashion that subjects some property owners to unwritten, subjective restrictions that the Council is not willing to impose on similarly situated property owners.[20] Thus, with County Council having made the determination through its legislative process that a 30 foot buffer between a lot and the subdivision boundary is all that is required, Respondent is not free to ignore that determination and require an even greater setback or to eliminate Lot 64 entirely, just because nearby homeowners object to that lot. To hold otherwise would allow Respondent to impose requirements on Petitioner simply because "the prevailing neighborhood wind is unfavorable."[21] Such action is "not acceptable when the property owner has met all the criteria that the local government has established."[22] Here, all of the lots in Fox Haven along the edge of the community are 30 feet from the Fox Haven/Smokey Hollow property line, just as all of the lots along the edge of the Smokey Hollow subdivision are 30 feet from that property line.[23] Lot 64, as originally proposed, is no different than any of these other lots, including the lots of the Fox Haven residents who complained about Lot 64. I find that Condition A violates *Ashburn* since Lot 64 complies with the specific criteria required by County Council and its removal is not

---

[20] *Gibson*, 877 A.2d at 56.

[21] *Gibson*, 877 A.2d at 79.

[22] *Id.*

[23] Smokey Hollow's Plan originally had Lot 64 setback 30' from Fox Haven, but Smokey Hollow remains willing to increase the setback for this lot to 100 feet.

designed to minimize any adverse impact on nearby landowners and residents.

**Condition O -- Wetlands Buffer**

The Property is zoned GR and located in the Coastal Area. Cluster subdivisions are permitted in the GR zone in the Coastal Area.[24] The Sussex County Zoning Code provides:

> Residential developments utilizing the cluster option of Subsection C(3) above within the AR-1 and AR-2 Residential Zoning Districts shall comply with the requirements set forth in §115-25F of the Sussex County Zoning Code.[25]

Before the Sussex County Council amended it to create a 25-foot wetlands *buffer* requirement, the Code provided:

> A minimum of 25 feet of permanent *setback* must be maintained around the outer boundaries of all wetlands. . . *No buildings or paving shall be placed within these setbacks.*[26] [Emphasis supplied]

This restriction was for a *setback*, not a *buffer*, and provided that no buildings or paving shall be placed in the setback – it had nothing to do with the distance of lot lines from wetlands or buffers from wetlands. Moreover, as discussed above, Sussex County Council subsequently adopted Ordinance 2852, which requires an average *buffer* of 30 feet from non-tidal wetlands for lots in a residential subdivision, effective November 17, 2022.

---

[24] Sussex County Zoning Code §115-194.3C(5).
[25] *Id.*
[26] Subsection of *former* Sussex County Zoning Code §115-25F.

In my view, this provision is inapplicable to the Property for two reasons. First, the Property is not located in an AR-1 or AR-2 district, so by the terms of the Code it does not apply, Second, even if it did apply, it concerns a setback, not a buffer, from wetlands. In my view, a "setback" refers to the distance between a building or other improvement and a lot line, while a "buffer" is the distance between a lot line and wetlands. Indeed, the Code defines "setback" as "[a]n area extending from the lot lines to the building setback lines within which no buildings or other structures may be erected."[27]

The Sussex County Zoning Code sets forth certain standards for cluster developments.[28] Respondent argues that, because Smokey Hollow is a cluster development, all those standards must apply because they set forth the cluster development requirements and review procedures. I disagree. While the Code sets forth certain standards for cluster developments, it does not mean that all those standards apply here. Code § 115-194.3C(5) refers to "developments utilizing the cluster option of Subsection C(3) above." Code § 115-194.3C(3), in turn, states: "Within the Coastal Area, clustering of single-family detached lots to a minimum lot size of 7,500 square feet is permitted in all residential zoning districts…"[29] Thus, while Code § 115-194.3C(3) permits clustering "in all residential zoning districts,"

---

[27] Sussex County Zoning Code §115-4.
[28] Sussex County Zoning Code §115-25F.
[29] Sussex County Zoning Code §115-194.3C(3).

and sets forth certain standards, Code § 115-194.3C(5) makes clear that the requirements of Code §115-25F only apply where the underlying zoning is AR-1 or AR-2. For all other residential zoning districts, Code §115-25F does not apply.

As discussed above, Petitioner agreed to voluntarily comply with Ordinance 2852, requiring an *average* buffer of 30 feet from non-tidal wetlands, even though the Ordinance did not apply to Smokey Hollow. Perhaps Respondent and Petitioner can now find common ground with respect to that offer. I find that Condition O of the Decision, which requires a fixed minimum buffer of 25 feet from all non-tidal wetlands, violates *Ashburn* since the Plan complies with the specific criteria required by County Council, and the buffer is not designed to minimize any adverse impact on nearby landowners and residents.

## CONCLUSION

For the reasons discussed above, I conclude that Respondent erred as a matter of law with respect to two of the conditions contained in its Notice of Decision Letter for the Preliminary Subdivision Plan for Smokey Hollow, dated April 12, 2024: Condition A (elimination of Lot 64) and Condition O (fixed 25-foot non-tidal wetland buffer). I reverse those conditions, and they shall be struck.

**IT IS SO ORDERED**.

/s/ Craig A. Karsnitz
Craig A. Karsnitz

16

cc:     Prothonotary