EDWARD J. MILLS, JR., Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 56, 2007.
Supreme Court of Delaware.
Submitted: October 24, 2007.
Decided: December 3, 2007.
Before STEELE, Chief Justice, BERGER and JACOBS, Justices.
JACK B. JACOBS, Justice.
This 3rd day of December 2007, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:
1. The defendant-below appellant, Edward J. Mills, Jr. ("Mills"), appeals from a Superior Court final judgment of conviction. A jury convicted Mills of possession with the intent to deliver a narcotic schedule II controlled substance, assault in the second degree, offensive touching, criminal impersonation, resisting arrest, failure to signal, and spinning tires. On appeal, Mills claims that the Superior Court erred and/or abused its discretion in: (1) denying Mills' motion for a judgment of acquittal; (2) failing to remedy the prosecution's improper and unduly prejudicial statements to the jury during closing argument; (3) not suppressing drug evidence obtained during a Terry search;[1] (4) admitting medical records into evidence; and (5) denying Mills' request for a continuance. We find no merit to Mills' claims and affirm.
2. On May 3, 2006, Probation and Parole Officers William DuPont ("DuPont") and Malcolm Stoddard ("Stoddard"), and Detective David Rosenblum ("Rosenblum"), while on patrol as part of a task force in Wilmington, observed a car stopped in the middle of the street with a radio playing at "an extremely high volume." After the driver spun the car's tires and made a turn without using a turn signal, the officers pulled the car over. Stoddard approached the vehicle and requested Mills, the driver, to present license, registration, and proof of insurance. Mills did not immediately respond, and had difficulty locating the car's registration. After Mills admitted not having a license, Stoddard asked him for his name and date of birth. Mills responded that his name was Omar Gibbs. Suspicious of the name given, and because Mills was being evasive and speaking quietly, Stoddard asked Mills to step out of the car so that he could conduct a Terry search for weapons.
3. As Stoddard began his search, Mills pushed off the vehicle into Stoddard, who grabbed Mills' shirt. Mills then started flailing and punching randomly. Rosenblum approached the scene and was struck by Mills in the face. DuPont then tackled Mills, and during the struggle, Mills bit DuPont. When DuPont pulled back, Mills reached into his pocket, and attempted to dispose of "several small rocks of an off-white chunky substance."[2] In all, five grams of crack cocaine, in chunks, were recovered by the police.[3]
4. On the morning of trial, Mills requested a continuance to obtain private counsel. Mills told the trial judge that his first meeting with his public defender had taken place only the week before the trial, that he was looking for a job so that he could afford to retain counsel, and that his grandmother was going to help him pay the new counsel. Mills did not present a precise timeframe for retaining substitute counsel, stating vaguely that he would need "weeks." The Superior Court denied the continuance request.
5. At trial, Detective Rosenblum testified as an expert witness and explained that the amount of crack cocaine found with Mills was greater than the amount a user would have on his person. Rosenblum also testified that the crack cocaine being in chunks and the absence of drug paraphernalia represented evidence of someone possessing with intent to deliver, as distinguished from possessing for personal use.
6. During his testimony about the struggle with Mills, Rosenblum stated that when Mills punched him in the face, that aggravated a previous neck injury. Rosenblum testified that he was prescribed painkillers at the hospital, and that he was still being treated for his injury. When the State moved to introduce Detective Rosenblum's medical records, the defense objected on hearsay grounds, specifically because there was no custodian of record to authenticate. The Superior Court overruled the objection and admitted the medical records.
7. During his closing argument, the prosecutor stated, in referring to potential danger to law enforcement officers during traffic stops "I told you in my opening that this is an example of just how the streets are dangerous." The prosecutor also mentioned Detective Rosenblum's testimony about his training and observations about drug dealers, and explained that the officers' job was to investigate such incidents and to testify about them. Lastly, the prosecutor stated that "it [is] the State's position that the evidence will lead you to conclusion [sic] that the defendant is guilty of all the charges."[4]
8. The jury convicted Mills of (among other offenses) possession with the intent to deliver a narcotic schedule II controlled substance. Mills moved for a judgment of acquittal on that conviction. The motion was denied.
9. Mills first challenges the Superior Court's denial of his motion for judgment of acquittal on the charge of possession with intent to deliver. Mills claims that the State failed to prove intent to deliver and that his conviction should have been reduced to unlawful possession. We review the Superior Court's denial of a motion for judgment of acquittal de novo, to determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime. For the purposes of this inquiry, this Court does not distinguish between direct and circumstantial evidence of [a] defendant's guilt."[5]
10. To convict of possession with intent to deliver, the State must prove that the defendant intended to deliver the drugs.[6] To prove intent, the State cannot rely solely on the quantity and/or packaging of drugs in the defendant's possession. Additional evidence must be provided to show that the drugs were not possessed merely for personal consumption.[7] Here, the police recovered five grams of crack cocaine from Mills. There is also evidence that the cocaine was in chunks and had no packaging. The State provided additional evidence of intent to deliver, through expert testimony. Detective Rosenblum testified that the quantity found on Mills was greater than what would normally be possessed by a user. Rosenblum further testified that dealers carry the drugs in chunks and do not wrap them, so that the drugs may be quickly disposed of by throwing them on the ground and stepping on them. Finally, Rosenblum testified that the absence of drug paraphernalia was a significant indication that the drugs were not for personal consumption.
11. Because the evidence presented by the State amply supports the jury finding that Mills had intent to deliver, the Superior Court did not err in denying Mills' motion for judgment of acquittal.
12. Next, Mills claims, for the first time on appeal, that the prosecutor made "improper and unduly prejudicial statements to the jury" during his closing argument. "[W]here defense counsel fails to raise any objection at trial to alleged prosecutorial misconduct and the trial judge fails to intervene sua sponte,"[8] we review claims of prosecutorial misconduct on appeal for plain error. A plain error is one so "clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[9]
13. Mills first challenges the prosecutor's statement during his closing argument that: "I told you in my opening that this is an example of just how the streets are dangerous." A prosecutor is not only an advocate, but also a "minister of justice," and must therefore avoid improper suggestions, insinuations, and assertions of personal knowledge.[10] However, using the pronoun "I" during a prosecutor's closing argument is not per se improper, and must be considered in the context in which the statement was made. [11] Viewed in context, the prosecutor's statement does not reflect a personal belief about the testimony or other evidence touching on Mills' guilt. [12] The challenged statement, which referred to the potential for violence against police officers during traffic stops, was general and impersonal,[13] and did not improperly interject the prosecutor's personal belief about Mills' guilt. Therefore, there was no plain error because the statement did not jeopardize the fairness of the trial.
14. The other statements challenged by Mills occurred when the prosecutor made references to the officers' testimony. Those references were: (1) Detective Rosenblum's testimony addressing his experience on the streets of Wilmington and activity in which he sees drug dealers engage; (2) the officers' job being to testify and investigate incidents such as the incident at trial; and (3) the evidence submitted through the officers' testimony supporting a verdict of conviction. Mills claims that these statements amounted to improper vouching.
15. Improper vouching occurs when the prosecutor implies some personal superior knowledge, beyond that logically inferred from the evidence at trial, that the witness has testified truthfully. [14] Here, however, there was no improper vouching because, in a closing argument, prosecutors are "allowed and expected" to make and explain inferences from the evidence that support the prosecution's theory that the defendant is guilty.[15] The prosecutor did not suggest that he was aware of evidence not presented to the jury that would bolster the officers' testimony, nor did the prosecutor's statements corroborate or tend to make the officers' testimony more credible.
16. Because the prosecutor did not make improper statements to the jury when he spoke in the first person or referred to the officers' testimony in his closing argument, there is no plain error.
17. Mills also claims, for the first time on appeal, that the drugs recovered during the Terry search should have been suppressed from evidence. Under Superior Court Criminal Rule 12(b)(3), motions to suppress must be made before trial.[16] Failure to file a motion to suppress before trial "shall constitute a waiver thereof, but the court for cause shown may grant relief from the waiver." [17] Because Mills did not file a pretrial motion to suppress in the Superior Court, no suppression hearing was held or ruled upon. This Court has held that in the absence of a motion to suppress and a pretrial suppression hearing, "there is not an adequate record upon which to conduct an appellate review of [the suppression] claim." [18] Moreover, under Supreme Court Rule 8, "[o]nly questions fairly presented to the trial court may be presented for review."
18. D.R.E. 103(d) does, however, allow this Court to take notice of "plain errors affecting substantial rights although they were not brought to the attention of the court."[19] Plain errors are "material defects" apparent on the face of the record, which are "basic, serious and fundamental in their character," and which "clearly deprive an accused of a substantial right, or ... show manifest injustice."[20] The record in this case does not evidence plain error by the Superior Court. Stoddard testified that Mills: (i) admitted to not having a driver's license, (ii) was speaking quietly and acting evasive, and (iii) when asked his name, he gave a name that made Stoddard suspicious. Under the plain error test, those elements justified the Terry search. Therefore, any drugs discovered by the officer during that search were not the "fruit of the poisonous tree" and were properly admitted into evidence.
19. Mills next claims that the Superior Court erred by admitting into evidence Detective Rosenblum's medical records. A Superior Court decision to admit evidence is reviewed for abuse of discretion.[21] Regularly kept business records are admissible as evidence "because the regularity of the record keeping provides an indicium of trustworthiness usually lacking in hearsay testimony."[22] D.R.E 803(6) authorizes the admission of business records if a custodian of the records or "other qualified person" testifies as to the regular practice of keeping the records in order to lay a proper foundation.[23] Because Rosenblum was not a custodian of the records or a person qualified to testify about the regularity and practice of keeping those records, the requirements of Rule 803(6) were not met. Therefore, the Superior Court improperly admitted the medical records as evidence.
20. In our view, however, the error was harmless. Harmless errors are those that do not constitute significant prejudice to the adversely affected party that would operate to deny that party a fair trial.[24] Detective Rosenblum testified that as a result of his physical encounter with Mills, he sustained a neck injury, which aggravated a previous injury. Rosenblum also testified that he was prescribed painkillers, and that he was still being treated by a chiropractor and another medical agency as a result. The information in the medical records was merely corroborative of the detective's testimony, and was not essential for the State to show that there was physical injury to a law enforcement officer.[25] Therefore, the erroneous admission of the medical records was harmless.
21. Finally, Mills challenges the Superior Court's denial, on the morning of trial, of his motion for a continuance in order to retain private counsel. A trial court's decision to deny a continuance is reviewed for abuse of discretion.[26]
22. The Sixth Amendment grants a defendant the right to chose and retain private counsel. That right, however, is not absolute. It must be weighed against the substantial governmental interest in a prompt and efficient prosecution.[27] A defendant should not be able to assert his Sixth Amendment right to retain private counsel in a way that interferes with the court's "inherent power to control and oversee the administration of justice."[28] We have held that no abuse of discretion occurs if the trial court denies a continuance request for a change of counsel made on the eve of trial where: "(1) there had been no previous complaint about counsel; (2) defendant had a prior opportunity to obtain substitute counsel; and (3) obtaining substitute counsel was uncertain and appeared to be a dilatory tactic."[29]
23. Here, Mills never complained about his court-appointed attorney before the morning of the trial when he requested the continuance. At that time, Mills simply stated that he had met with the public defender for the first time only the week before trial. Additionally, Mills had ample opportunity to retain substitute counsel before the date of his request for a continuance. Although he had been released from incarceration two months before the trial, he took no step to retain new counsel during that time. Moreover, the retention of new counsel was uncertain and a continuance would have unnecessarily delayed the proceedings. Mills was uncertain about how he was going to obtain the funds to pay the new attorney, and did not present a precise timeframe for retaining substitute counsel, stating only that he would need "weeks." In these circumstances, the Superior Court did not abuse its discretion in denying Mills' request for a continuance.
NOW, THEREFORE IT IS ORDERED that the judgments of the Superior Court are AFFIRMED.
NOTES
[1] See Terry v. Ohio, 392 U.S. 1 (1968).
[2] App. to Appellant's Opening Br., at A-10.
[3] Id. at A-18.
[4] App. to Appellant's Opening Br., at A-23-28.
[5] Hardin v. State, 844 A.2d 982, 989 (Del. 2004) (quoting Cline v. State, 720 A.2d 891, 892 (Del. 1998)).
[6] The elements of possession with intent to deliver are: (1) the substance is cocaine; (2) the defendant must know it is cocaine; (3) the defendant must possess the cocaine actually or constructively; and (4) the defendant must intend to deliver the cocaine. See Guardarrama v. State, 2006 WL 2950494, at *2 n.4 (Del. Supr.) (citing 16 Del. C. § 4753A9A(a)(2)).
[7] Hardin, 844 A.2d at 989 (such additional evidence may be in the form of detective's expert testimony that, based on his experience, the quantity of drugs found in defendant's possession and the packaging material evidenced that the drugs were intended for sale). See also Guardarrama, 2006 WL 2950494, at *3.
[8] Baker v. State, 906 A.2d 139, 151 (Del. 2006).
[9] Mays v. State, 815 A.2d 349 (Del. 2003) (citing Wainwright v. State, 504 A.2d 1096, 1100 (Del. 1986)).
[10] See Baker, 906 A.2d at 152 (with this responsibility come "specific obligations to see that the defendant is accorded procedural justice and that guilt is decided on the basis of sufficient evidence.")
[11] Id. (finding that the words "we know" and "we caught" were not used as statements of the prosecutor's belief or opinion about the truthfulness of any testimony or evidence).
[12] See Pennell v. State, 602 A.2d 48 (Del. 1991) (citing United States v. Young, 470 U.S. 1, 18 (1985)) (arguments reflecting the prosecutor's personal belief about the defendant's guilt should be avoided to prevent any impression that there was evidence supporting the charges against the defendant that the prosecutor was aware of, but that was not presented to the jury).
[13] See Booze v. State, 919 A.2d 561 (Del. 2007) (holding that prosecutor did not cross the line between a proper and an improper argument when comments were impersonal and a reasonable response to defendant's contemptuous language).
[14] See White v. State, 816 A.2d 776, 779 (Del. 2003) (citing Miller v. State, 2000 WL 313484, at *4 (Del. Supr.)).
[15] See Booze, 919 A.2d at 561 (citing Johnson v. State, 711 A.2d 18, 31 (Del. 1998)).
[16] Super. Ct. Crim. R. 12(b)(3).
[17] Super. Ct. Crim. R. 12(f).
[18] Jones v. State, 2005 WL 2473789, at *1 (Del. Supr.) (citing Tricoche v. State, 525 A.2d 151, 154 (Del. 1987)).
[19] D.R.E. Rule 103(d). See also Wainwright v. State, 504 A.2d 1096, 1110 (Del. 1986); Jones v. State, 2005 WL 2473789, at *1; Jackson v. State, 1994 WL 397558, at *3 (Del. Supr.).
[20] Jones v. State, 2005 WL 2473789, at *1 (citing Wainwright v. State, 504 A.2d at 1110).
[21] See Cooper v. State, 608 A.2d 726 (Del. 1992) (citing Lampkins v. State, 465 A.2d 785, 790 (Del. 1983)).
[22] Dorman v. Plummer, 2001 WL 32645, at *2 (Del. Ch.).
[23] D.R.E. 803(6); Cooper, 608 A.2d at 726.
[24] See Barrow v. Ambramowicz, 2007 WL 2254526, at *4 (Del. Supr.).
[25] See 11 Del. C. § 612(a)(3) (defining assault in the second degree).
[26] Hicks v. State, 434 A.2d 377, 381 (Del. 1981) (holding that "[u]nless it is based on clearly unreasonable or capricious grounds, a discretionary ruling on a motion for continuance will not be disturbed by this Court.").
[27] See Ketchum v. State, 1989 WL 136970, at *2 (Del. Supr.) (citing Wheat v. United States, 487 U.S. 153, 158-59 (1988)).
[28] Id. (citing United States v. Burton, 584 F.2d 485, 489 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069 (1979)).
[29] Id. (citing Riley v. State, 496 A.2d 997, 1018 (Del. 1985)).