IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEREMAINE T. TINGLE, | § | |
| | § | No. 542, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID Nos. N1702000035 |
| STATE OF DELAWARE, | § | N1702000526 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 8, 2019
Decided: May 10, 2019

Before **STRINE**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

**O R D E R**

This 10th day of May 2019, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     Jermaine Tingle was convicted by a Superior Court jury in January 2018 of multiple drug and firearm offenses and eventually sentenced as a habitual offender to 20 years of unsuspended Level V incarceration. In this direct appeal, Tingle does not claim that anything untoward occurred during his trial. Instead, his appellate claims relate exclusively to the Superior Court's denial of his 11th-hour request for a continuance so that he could fire his privately retained counsel to hire another lawyer. We see no merit to Tingle's claims and therefore affirm the Superior Court's judgment.

(2)     Tingle was arrested on February 1, 2017.  A few months later, a privately retained lawyer entered his appearance on Tingle's behalf.[1]  Tingle's lawyer conducted discovery and filed two motions to suppress evidence, one in October 2017 and the other in December 2017.  The Superior Court denied both motions.

(3)     On the morning when Tingle's trial was scheduled to begin and after the court entertained argument on and denied Tingle's second motion to suppress, the court engaged Tingle in the standard colloquy regarding his rejection of the State's final plea offer.

(4)     During the colloquy, Tingle expressed dissatisfaction with his lawyer and, in particular, his inability to give "definite answers to yes or no questions"[2] about what might occur during his trial. The Superior Court asked Tingle and his counsel whether there were any questions the court might answer that would not require the disclosure of confidential communications.  Tingle's counsel responded that Tingle was asking questions "about how things will be done at trial,"[3] observing that such questions cannot be "answer[ed]. . . 100 percent in the affirmative or negative"[4] because decisions that are made during a trial depend on "what evidence

---

[1] App. to Opening Br. A22 (hereinafter "A __").
[2] A51.
[3] *Id.*
[4] *Id*. at A51–52.

and testimony . . . reveal[].”[5] The trial judge then again told Tingle that she would answer any questions he had that could be asked without revealing his trial strategy and confidential information. Tingle then asked, "[s]o you're saying there's no way I can seek new counsel?" The court replied, "[t]hat's correct. It's too late. We are ready for trial today."[6]

(5) After the Superior Court told Tingle that the trial would not be continued, Tingle asked the court if he could express an objection. It was not clear whether Tingle was asking about his right to make objections at trial or whether he wished to object to the court's answer to his question regarding his ability to seek new counsel. The following exchange addressed the difference between these possibilities:

> THE COURT: . . . [I]f you want to object to a question that the State is asking a witness, your attorney has to do that. You cannot do that. If you want to put on the record that you object to the Court's ruling that you be permitted to get new counsel, then you can do that.
>
> [TINGLE]: Well, I would like to object to the Court's ruling and put that on. Let the record reflect that I objected to the Court's denying me to seek new counsel.[7]

(6) On appeal, Tingle raises two issues, both grounded in our guidance in *Briscoe v. State*[8] regarding eve-of-trial continuance requests for the purpose of

---

[5] *Id.* at A52.
[6] *Id.*
[7] *Id.* at A52–53.
[8] 606 A.2d 103 (Del. 1992).

retaining substitute counsel. First, Tingle argues that the Superior Court committed reversible error when it did not continue Tingle's trial so that he could replace his privately-retained lawyer with a new one. Second, Tingle contends that the Superior Court erred by not determining whether he wished to represent himself "even after he implicitly requested to represent himself"[9] in violation of his right to self-representation under the Sixth Amendment of the United States Constitution and Article 1, Section 7 of the Delaware Constitution.[10]

(7) "We review the denial of a continuance for a change of counsel at the start of a criminal trial for an abuse of discretion."[11] "As an issue of constitutional dimension, we review *de novo* the trial court's denial of [a defendant's] request to proceed *pro se*."[12]

(8) In *Briscoe*, we held that when a defendant requests a continuance on the eve of trial to seek new counsel, the Superior Court must engage in a two-part inquiry.[13] First, "[t]he trial court must initially determine if the reasons for the

---

[9] Opening Br. 8.

[10] *Id.*

[11] *Joyner v. State*, 2017 WL 444842, at *4, 155 A.3d 832 (Del. 2017) (Table); *see Mills v. State*, 2007 WL 4245464, at *5, 947 A.2d 1122 (Del. 2007) (Table) ("The Sixth Amendment grants a defendant the right to choose and retain private counsel. That right, however, is not absolute. It must be weighed against the substantial governmental interest in a prompt and efficient prosecution. A defendant should not be able to assert his Sixth Amendment right to retain private counsel in a way that interferes with the court's 'inherent power to control and oversee the administration of justice.'" (citations omitted)).

[12] *Stigars v. State*, 674 A.2d 477, 479 (Del. 1996) (citing *Grace v. State*, 658 A.2d 1011, 1015 (Del. 1995)).

[13] *Briscoe*, 606 A.2d at 107.

defendant's request for substitute counsel constitute good cause to justify a continuance of the trial, in order to allow new counsel to be obtained."[14]  Second, "[i]f the trial court determines that the defendant is not entitled to a continuance, in order to engage new counsel, the defendant must then choose between two constitutional options, *either* continuing with his existing counsel *or* proceeding to trial *pro se*."[15]  If the defendant chooses to proceed *pro se*, then the Court must ensure that his waiver of his right to counsel is knowing, intelligent, and voluntary.[16]

(9)  On appeal, Tingle's claim that the Superior Court erred when it did not continue his trial is based on the court's purported failure to ascertain whether his dissatisfaction with his trial counsel constituted good cause to justify a continuance.[17]  But this argument ignores our close adherence in *Briscoe* to *United States v. Welty*,[18] in which the Third Circuit Court of Appeals held:

> [W]hen, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter.  If the reasons are made known to the court, the court may rule without more.  If no reasons are stated, the court then has a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known.[19]

---

[14] *Id.*

[15] *Id.* (emphasis in original).

[16] *Id.*

[17] Opening Br. 9.

[18] *Briscoe*, 606 A.2d at 108.

[19] 674 F.2d 185, 188 (3d Cir. 1982) (quoting *Brown v. United States*, 264 F.2d 303, 369 (D.C. Cir. 1959)).

5

*Welty* concluded that a defendant could establish good cause to warrant a substitution of counsel on the eve of trial by showing "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney."[20]

(10) In *Jones v. State*,[21] we addressed a claim similar to Tingle's. In *Jones*, the defendant stated that his reasons for seeking new counsel were his attorney's lack of preparation and apparent interest in having him accept a plea bargain instead of going to trial.[22] Because the defendant did "not identify any other pertinent information that the court should have known before deciding whether to grant his request," we concluded, citing *Welty*, that the Superior Court did not abuse its discretion by failing to question the defendant as to the reasons for his dissatisfaction with counsel before denying his request for a continuance.[23]

(11) This Court has also determined that "'[t]he denial of a continuance for change of counsel on the eve of trial is not an abuse of discretion when: (1) there had been no previous complaint about counsel; (2) the defendant had a prior opportunity to obtain substitute counsel; and (3) obtaining substitute counsel was uncertain and appeared to be a dilatory tactic.'"[24] Likewise, in *Mills v. State*, this Court held that

---

[20] *Welty*, 674 F.2d at 188.
[21] 2000 WL 1504965, 765 A.2d 952 (Del. 2000) (Table).
[22] *Id.* at *1.
[23] *Id.* at *2.
[24] *Stevenson v. State*, 709 A.2d 619, 631 (Del. 1998) (quoting *Riley v. State*, 496 A.2d 997, 1018 (Del. 1985)); *see Joyner*, 2017 WL 444842, at *1; *see also Waltman v. State*, 2003 WL 23104199, at *1, 840 A.2d 642 (Del. 2003) (Table).

the Superior Court did not abuse its discretion by denying the defendant's request for a continuance on the eve of trial to seek new counsel because (i) "[the defendant] never complained about his court-appointed attorney before the morning of the trial when he requested the continuance," (ii) "[the defendant] had ample opportunity to retain substitute counsel before the date of his request for a continuance," and (iii) "a continuance would have unnecessarily delayed the proceedings."[25]

(12)    Here, like the defendant in *Jones*, Tingle revealed his reason for seeking new counsel—it was because his lawyer was unable to provide him with "definite answers to yes or no questions."[26]  In response, Tingle's trial counsel stated Tingle's questions, by their very nature, were not so simply answered.  The Superior Court had no duty to make a further inquiry to determine whether Tingle had additional reasons for seeking new counsel.  It is worth noting that, like the defendant in *Mills*, (i) Tingle expressed no prior dissatisfaction with trial counsel until the day of trial;[27] (ii) Tingle had the opportunity to replace his privately retained counsel seven months before trial;[28] and (iii) a continuance would have unnecessarily delayed the trial.  The

[25] 2007 WL 4245464, at *5, 947 A.2d 1122 (Del. 2007) (Table).
[26] A50–51.
[27] A15–16; A43–50.
[28] A22; A34.

7

manner in which the Superior Court addressed—and denied—Tingle's continuance request was not an abuse of discretion.

(13) Tingle next argues that the Superior Court "denied Mr. Tingle his right to self-representation by failing to determine whether he wished to proceed to trial with counsel or represent himself, and by informing him that he had to allow his attorney to try the case."[29] This claim fails for two reasons.

(14) First, Tingle reads our decision in *Briscoe* too expansively. In *Briscoe*, the Superior Court denied a last-minute continuance request to retain new counsel. Briscoe then told the trial judge that he wished to cross-examine the prosecution's witnesses. The trial judge consented and, after a very brief colloquy, the trial began without any warnings to Briscoe about the dangers of self-representation. Although Briscoe's counsel made an opening statement, "the trial proceeded thereafter with Briscoe acting as his own attorney and his appointed attorney serving as standby counsel."[30] Briscoe cross-examined witnesses, made objections to the State's evidence, and called defense witnesses. But Briscoe's appointed lawyer also participated in the trial, making (as mentioned) the opening statement, making several evidentiary objections, and moving to reopen the case to present testimony that would support an entrapment instruction.

---

[29] Opening Br. 21.
[30] *Briscoe*, 606 A.2d at 106.

(15)   It was against this backdrop that we held that, if the Superior Court denies an 11th-hour continuance request to retain substitute counsel, "the defendant must then choose between two constitutional options, *either* continuing with his existing counsel *or* proceeding to trial *pro se*."[31]   Tingle now argues that this language mandated a colloquy, after the denial of his continuance request, to determine whether he wished to proceed to trial with his current counsel or represent himself.  This represents a misreading of *Briscoe*, which was plainly addressing a scenario where the defendant had proceeded to trial largely acting as his own lawyer but where the defendant's so-called "standby" counsel did much more than "stand by."  What *Briscoe* said is that when a defendant chooses to represent himself (i) he cannot "tag-team" with his standby counsel, and (ii) the trial court must engage in a careful inquiry to ensure that the defendant has knowingly and intelligently waived his right to counsel.  Because the Superior Court had not made the determination that Briscoe had effectively waived his right to counsel, we reversed.  Here, Tingle did not elect to proceed *pro se,* and his counsel remained as counsel throughout the trial.  Therefore, whether Tingle had waived his right to counsel was not an issue, and no separate colloquy on the topic of self-representation was required.

---

[31]  *Id*. at 107 (emphasis in original).

Second, Tingle's argument hinges on what he characterizes his "tacit request to represent himself at trial."[32] He claims that his questioning of the trial judge about whether he could make an objection triggered the need for an inquiry into whether Tingle wished to exercise his right to self-representation. But our case law does not support this argument. To the contrary, we have emphasized that the right to self-representation will be honored only when it is "clearly and unequivocally assert[ed]" and only if the defendant knowingly, intelligently, and voluntarily waives his right to counsel.[33] Tingle's ambiguous question about his standing to make objections, characterized by Tingle himself as a merely "implicit"[34] or "tacit"[35] request, does not meet this standard. To be sure, a more robust inquiry by the trial judge might have teased out a request to proceed *pro se* by Tingle, but such exploratory questioning in response to Tingle's request was not constitutionally required.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED as to Tingle's convictions.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[32] Opening Br. 24.
[33] *Morrison v. State*, 135 A.2d 69, 73 (Del. 2016); *see also Stigars*, 674 A.2d at 479 ("When faced with an ambiguous request for self-representation, trial court should lean in favor of the right to counsel.").
[34] Opening Br. 8.
[35] *Id*. at 24.