# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KHALIF WATSON, | ) | ID NOs. 1703002846A&B |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Date Decided: October 26, 2022

*Upon the Defendant's Amended Motion for Postconviction Relief Pursuant to Rule 61.* **GRANTED, in part, DENIED, in part.**

## ORDER

John S. Taylor, Esquire, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, 19801, Attorney for the State of Delaware.

Natalie S. Woloshin, Esquire, Woloshin, Lynch & Associates, P.A., Wilmington, DE 19803

Khalif Watson, *Pro Se*.

**SCOTT, J.**

1

**INTRODUCTION**

Before the Court is Defendant Khalif Watson's ("Defendant") Amended Motion for Postconviction Relief ("Motion"). Defendant filed the instant Motion for Postconviction Relief as well as a motion for appointment of counsel on August 1, 2019. The Court granted the request and Defendant was appointed counsel. On November 30, 2021, appointed counsel filed an Amended Motion for Post-Conviction Relief. This Court will consider Defendant's Amended Motion for Postconviction Relief, the State of Delaware's ("State") response, Trial Counsel's filed affidavit, and Defendant's reply. For the reasons stated below, Defendant's Motion for Postconviction Relief is **GRANTED, in part, DENIED, in part**.

**PROCEDURAL BACKGROUND**

On April 3, 2017, a Delaware grand jury returned a five-count indictment, charging Defendant with Possession of a Firearm by a Person Prohibited (PFBPP); Possession of Ammunition by a Person Prohibited (PABPP); Carrying a Concealed Deadly Weapon (CCDW); and Resisting Arrest. An oral motion to sever the two person prohibited offenses was presented to the court and granted on January 3, 2018.

On January 3, 2018, a jury trial was held on the CCDW and Resisting Arrest charges and two days later the jury returned a verdict of guilty on both counts. The

Court then conducting a bench trial on the PFBPP and PABPP charges and render a verdict of guilty as to both offenses.

On September 27, 2018, Defendant was sentenced to an aggregate Level 5 sentence of 10 years and a Corrective Sentence was ordered on August 31, 2018, to reflect only the removal of aggravating factor.

No direct appeal was filed. On July 20, 2019, Defendant filed a Pro Se Motion for Postconviction Relief and Motion for Appointment of Counsel. Additionally, Defendant also filed a pro se "Motion to Amend" on August 1, 2019. On August 5, 2020, this Court granted Defendant's Motion for Counsel and Office of Conflicts' Counsel appointed Postconviction Counsel.

## FACTS

On March 4, 2017, Defendant allegedly fled from police contact because there was a handgun on his person when holding a status of person prohibited. Defendant fled to his sister Rashida Hidson's ("Rashida") home where he was tackled by a police officer as he crossed the threshold. At the same time, the tackling officer observed Defendant throw a handgun that had been in his waist underneath a couch. A second officer attempted to detain Defendant. Defendant's sister picked up the handgun and ran out of the home where she was apprehended by officers not far from the residence.

3

At trial, the defense called four witnesses, Defendant and his three sisters. Defendant testified that he did not have a gun that day and claimed he fled because he knew he had an outstanding capias and did not want to go to jail. One of Defendant's sisters, Omisha Watson ("Omisha") claimed the gun was hers and that she had it in her bookbag when the police arrived. Asha Watson ("Asha") claimed she did not see Defendant with a gun. Rashida Hinson claimed that Omisha owned a silver gun and that she did not see Defendant discard anything in the police encounter. Finally, Defendant took the stand in his own defense and admitted that he fled upon seeing police officers. Defendant asserted he knew about his outstanding capias and fled because he felt like the walls were closing in on him, thinking it was an option to avoid jail. Defendant conceded he resisted arrest, however, he maintained he did not have a gun on the date in question. Defendant's prior convictions for a 2010 Robbery Second and a 2012 Federal Firearms charge were entered without objection and then were used by the State in closing arguments to attack Defendant's credibility.

## DEFENDANT'S ASSERTIONS

On the face of Defendant's Amended Motion, one ground for postconviction relief is asserted: ineffective assistance of counsel. Defendant contends Trial Counsel was ineffective for failing to object to the admission of one of Defendant's prior convictions and for failing to object to misconduct by the prosecutor.

4

Additionally, Defendant contends Trial Counsel was ineffective for failing to file a direct appeal. In Defendant's reply, he further argues ineffective assistance of counsel because Defendant alleges Trial Counsel never discussed an appeal with him, never asked if he wanted to appeal, never told him what possible grounds he had for an appeal or the probable outcome of an appeal. Defendant alleges that had the appeal options been presented to him, he would have appealed, with or without Trial Counsel's help.

## DISCUSSION

### I. No Procedural Bar Exist to Preclude Court from Analyzing Defendant's Claim

The Court must address Defendant's motion in regard to Rule 61(i) procedural requirements before assessing the merits of his motion.[1] If a procedural bar exists, then the Court will not consider the merits of the postconviction claim.[2]

Rule 61(i)(1) bars motions for postconviction relief if the motion is filed more than one year from final judgment.[3] Defendant's Motion is not time barred by Rule 61(i)(1) because Defendant filed this Motion within one year of his conviction becoming final. Rule 61(i)(2)[4] bars successive postconviction motions, which is not

---

[1] Super. Ct. Crim. R. 61 (i)( 1).
[2] *Younger v. State,* 580 A.2d 552, 554 (Del. 1990).
[3] See Super. Ct. Crim. R. 61 (i)(1) (motion must be filed within one year of when conviction becomes final.)
[4] Super. Ct. Crim. R. 61(i)(2).

5

applicable as this is Defendant's first postconviction motion. Rule 61(i)(3) bars relief if the motion includes claims not asserted in the proceedings leading to the final judgment.[5] This bar is applicable to Defendant's claims. Ordinarily, ineffective assistance of counsel cannot have been raised in any direct appeal, therefore the procedural bar would not apply. Finally, Rule 61(i)(4) bars relief if the motion is based on a formally adjudicated ground.[6] This bar does not apply. Therefore, no procedural bar exists in the present case. The Court must analyze the merits of Defendant's Motion.

## II. Ineffective Assistance of Counsel Claims

### A. Standard of Review

Delaware has adopted the two-prong test proffered in *Strickland v. Washington* to evaluate ineffective assistance of counsel claims.[7] To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness"[8] and that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[9]

---

[5] Super. Ct. Crim. R. 61(i)(3).
[6] Super. Ct. Crim. R. 61(i)(4).
[7] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988).
[8] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).
[9] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).

To avoid the "distorting effects of hindsight," counsel's actions are afforded a strong presumption of reasonableness.[10] The "benchmark for judging any claim of ineffectiveness [is to] be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[11] The Court's objective in evaluating counsel's conduct is to "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[12]

**B. As to Trial Counsel's decision to not object to Defendant's prior convictions, Defendant fails to prove the result would have been different had the convictions not be admitted.**

Based on the facts before this Court, Trial Counsel's actions do not constitute ineffective assistance of counsel under *Strickland* because there is no harm in Trial Counsel's decision not to explicitly object to Defendant's prior convictions. According to the record, there is no indication that the outcome would have been different had Trial Counsel objected to their admission. The jury was advised in its jury instructions that the jury may consider evidence of the defendant's previous conviction "for the sole purposes of judging the defendant's credibility, or believability" and the convictions may be considered evidence of defendant's guilt

---

[10] *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) (citing *Strickland*, 466 U.S. at 689).
[11] *State v. Wright*, 2015 WL 648818, at *3 (Del. Super. Feb. 12, 2015) (internal quotation marks omitted).
[12] *Neal*, 80 A.3d at 942 (citing *Strickland*, 466 U.S. at 689).

or innocence. Defendant fails to allege or prove the outcome of Defendant's conviction would be different if the convictions were excluded. Therefore, there is no viable ineffective assistance of counsel claim.

Defendant's Motion for Postconviction Relief based on Ineffective Assistance of Counsel due to Trial Counsel's decision to not object to Defendant's prior convictions is **DENIED.**

### C. As to Defendant's allegations concerning Trial Counsel failing to inform Defendant of appellate rights.

An affidavit from Trial Counsel states Trial Counsel can "only say [he] advised Mr. Watson of his right [to appeal] as well as members of his family" and "it appears [he] did not send Mr. Watson [his] standard letter advising him of his right to appeal as is [his] usual practice" The Court, nonetheless, determines that Defendant should be permitted to file an appeal to the Supreme Court because counsel admits that he erred by not advising Defendant in writing of his constitutional right to appeal. A claim of ineffective assistance of counsel by a defendant is not procedurally barred because a "claim of ineffective assistance of counsel is a constitutional violation that undermines the fundamental legality, reliability, integrity or fairness of a proceeding."[13] In this case, there is no record of an appeal being docketed with the Supreme Court. Moreover, in responding to

---

[13] *State v. Morla*, 2007 WL 2566012, at *3 (Aug. 30, 2007).

8

Defendant's allegations, Defendant's attorney admits that he failed to advise him in writing of his right to appeal, even though it was his usual practice. A failure to inform a client in writing of his right to appeal constitutes ineffective assistance of counsel.[14]

Accordingly, Defendant's motion for postconviction relief is **GRANTED** to the extent that the sentence he received on August 17, 2018 is hereby **VACATED**, and he is resentenced to the same terms and conditions, effective this 26th day of October 2022. Attached is a new sentencing order. Defendant has thirty days from the date of this decision to file a new appeal to the Delaware Supreme Court.

## III. Prosecutorial Misconduct Claims

### A. *Standard of Review*

The standard of review for prosecutorial misconduct claims depends on whether the issue was fairly presented below.[15] If defense counsel raised a timely objection to the conduct at trial, or if the trial judge considered the issue *sua sponte*,

---

[14] *State v. Nalley*, Del.Super., ID No. 0407025446, Babiarz, Jr., J. (Nov. 22, 2006) (Letter Op. at 2) (citing *Braxton v. State*, 479 A.2d 831 (Del.1984) and *Dixon v. State*, 581 A.2d 1115 (Del.1990)).
[15] *Baker v. State*, 906 A.2d 139, 148 (Del. 2006).

then the conduct is reviewed for harmless error.[16] If neither action occurred, this Court reviews under the standard of plain error.[17]

When reviewing misconduct under the plain error standard, the first step in the plain error review requires the Court to examine whether prosecutorial misconduct occurred.[18] If the Court determines that no misconduct occurred, the analysis ends.[19] However, if the prosecutor did engage in misconduct, the Court applies the following Wainwright standard:

> the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.[20]

If the Court finds plain error occurred under the *Wainwright* standard, the Court will reverse without reaching the third step of the analysis.[21] If misconduct would not warrant reversal under *Wainwright*, the Court applies *Hunter* as "the third analytical step and consider whether the prosecutor's statements are repetitive errors

---

[16] *Id.* at 148.
[17] *Kurzmann v. State*, 903 A.2d 702, 709 (Del. 2006); *Morris v. State*, 795 A.2d 653, 657 (Del. 2006)
[18] *Baker*, 906 A.2d at 150.
[19] *Id.*
[20] *Wainwright v. State,* 504 A.2d 1096, 1100 (Del. 1986) (citations omitted).
[21] *Baker*, 906 A.2d at 150.

that require reversal because they cast doubt on the integrity of the judicial process."[22] Under the *Hunter* analysis, the Court can reverse, but need not do so, even if the prosecutorial misconduct would not warrant reversal under the *Wainwright* standard.[23]

**B. *As to Prosecutor's "misconduct"***

a. *Prosecutor's Questioning of Defendant*

Defendant alleges the questioning of Defendant by the prosecutor constituted misconduct because it was presented in such a way that the intent of the questioning was to introduce propensity evidence at trial, not for the proper purpose of questioning Defendant's credibility. The following exchange is complained about:

| | |
|---|---|
| Prosecutor: | Now, [Trial Counsel] asked you, you have two prior felony convictions. |
| Defendant: | Yes, sir, Mr. Taylor |
| Prosecutor: | A robbery second from 2010? |
| Defendant: | Yes, sir. |
| Prosecutor: | And you testified that your federal felony for possession of a firearm charge was from 2012. Would you believe me if I told you that conviction was actually from 2013? |

---

[22] *Id.*

[23] *Id.*

| Defendant: | That case, I got arrested in 2012. |
|---|---|
| Prosecutor: | But the sentencing, when the conviction was entered. |
| Defendant: | I was locked up nine months before I got sentenced. So, I got locked up in August, so yes, it could have been 2013, yes sir. |
| Prosecutor: | And your testimony today is that you didn't have a gun on you? |
| Defendant: | Not at all, Mr. Taylor, no. |

Defendant argues this exchange on the prior gun conviction was not intended to call Defendant's veracity into question; it was designed to "inject improper propensity evidence into the trial." Because defense counsel did not raise a timely objection to either instance of alleged prosecutorial misconduct, and the trial judge did not intervene *sua sponte*, we review this claim for plain error.[24] If this Court determines no misconduct occurred, our analysis ends there. The above exchange does not constitute misconduct. Here, the prosecutor questions Defendant about a discrepancy in the year of his Firearm offense and the discrepancy was then resolved by Defendant's statement confirming the offense could have been from 2013. Subsequently, the prosecutor then transitioned his questioning to discuss Defendant's previous testimony. This line of questioning, considering the resolution of the date of the offense and transition to a new topic, does not insinuate that

---

[24] *Baker*, 906 A.2d at 148.

because Defendant has a prior gun offense, he did have a gun on him on the date the Defendant was alleged to have carried a concealed deadly weapon. Because this Court determined misconduct did not occurred, no further analysis is necessary.

### b. Prosecutor's Statements Made During Closing

#### i. Statements regarding Defendant's Credibility

Defendant subsequently alleges the prosecutor engaged in improper vouching during closing argument. Defendant argues the Trial Counsel's failure to seek exclusion of the firearms conviction allowed the prosecutor to make "improper" closing arguments. The prosecutor argued during closing, "And finally, the defendant. You get to evaluate his credibility. He was a felon. He said he didn't have a gun. He's been convicted of robbery in the second degree, and felony possession of a firearm before." The prosecutor further stated, "the State submits to you that the harmonious story to be made of this case is that the defendant, who is a felon, was in possession of a firearm." This Court has already determined Trial Counsel's choosing to not seek exclusion of the firearms convictions does not constitute ineffective assistance of counsel. Because the convictions were properly admitted, the prosecution may have commented on his Defendant's felon status. There is no misconduct in the statements Defendant complains of. The Court's analysis ends here as the standard of review for this matter is of plain error.

## ii. Statements about Police Officer Testimony

Defendant then argues misconduct in the prosecutor "arguing in closing that the police were more credible than the defense witnesses." The statement Defendant complains of are: "you have two officers. This is their job; this is what they do. This is another day at work for them. This is another day at Court for them. There have been days before and after this." Defendant argues that this is "just another day for them" and "Just another day in court" is improper vouching for the credibility of the officers by "essentially telling the jury that police officers do not lie." "Improper vouching occurs when the prosecutor implies some personal superior knowledge, beyond that logically inferred from the evidence at trial, that the witness testified truthfully."[25] Therefore, prosecutors generally cannot vouch for the credibility of a witness by stating or implying personal knowledge that the witness' testimony is correct or truthful. Here, however, there was no improper vouching because, in a closing argument, prosecutors are "allowed and expected" to make and explain inferences from the evidence that support the prosecution's theory that the defendant

---

[25] See *White v. State*, 816 A.2d 776, 779 (Del.2003) (citing *Miller v. State*, 2000 WL 313484, at *4 (Del.Supr.)).

is guilty.[26] The prosecutor, in this case, did not suggest they knew of evidence not presented to the jury that would bolster the officers' testimony, nor does this Court find the statements made by the prosecutor about the officers corroborated or tended to make the officers' testimony more credible.[27] Because the prosecutor did not make improper statements to the jury by speaking in the first person or referring to the officers' testimony in his closing argument, no plain error exists. Even if the prosecutor's statements suggested the police testimony was more credible, this Court read a curative "Credibility of Witnesses and Conflicts in Testimony" instruction to reiterate to the jury they are the sole judge of credibility.

### iii. Statements about Omisha's Credibility

Defendant, lastly, argues the prosecutors attack of Omisha's credibility constituted misconduct. Defendant contends the prosecutor should not urged jurors to consider the seriousness their own roles in comparison to Omisha's testimony that she was unaware of all information contained within the plea paperwork she signed. The statements Defendant complains of are Omisha signed plea paperwork "in a courtroom like this, in a circumstance that people take very seriously. Think about how seriously you're taking your jury service today and two days ago. And you guys

---

[26] See *Booze v. State*, 919 A.2d 561, 561 (Del. 2007) (citing *Johnson v. State*, 711 A.2d 18, 31 (Del.1998)).
[27] *Mills v. State*, 947 A.2d 1122 (Del. 2007).

don't even have to say anything in court. Your role is simply to listen. Imagine how focused you would be if you were pleading guilty to a crime, if you were here for one of the most serious things that has happened to you in your life. She read that paper, she knew what was on it. She heard the judge say what was on it." Defendant has not provided this Court with grounds to find misconduct where a prosecutor attacks of credibility of a witness based on evidence from the trial. Here, the prosecution was attacking Omisha's credibility as she said she did not know what was contained in the plea agreement she signed in connection to Defendant's case. This tends to show bias and can be used toward her credibility. The Court does not find such statements to be misconduct, therefore, its analysis ends.

Defendant's Motion for Postconviction Relief on the prosecutorial misconduct grounds is **DENIED.**

## CONCLUSION

Therefore, for the reasons stated above, the Defendant's Motion for Postconviction Relief is **GRANTED, in part, DENIED, in part.**

**IT IS SO ORDERED.**

/s/ Calvin L. Scott
**Judge Calvin L. Scott, Jr.**

16