**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

HARMONY AT KENT,                               )
    Appellant,                             )
                                           )
    v.                                     )      **C.A. No. N25A-02-001 DJB**
                                           )
DELAWARE DEPARTMENT OF                          )
HEALTH AND SOCIAL SERVICES,                     )
DIVISION OF HEALTH CARE                         )
QUALITY,                                        )
    Appellee.                              )

Date Submitted: July 21, 2025
Date Decided:  October 13, 2025

**MEMORANDUM OPINION**

*On Appellant's Administrative Appeal from the Decision of the Delaware Department of Health and Social Services, Division of Health Care Quality –* Affirmed.

David M. McGeady, Esquire, Burns White, LLC, Wilmington, Delaware, *attorney for Appellant*

Lauren E. Maguire, Esquire, Deputy Attorney General, Wilmington, Delaware, *attorney for Appellee*

**BRENNAN, J.**

Harmony at Kent (hereinafter "Harmony") is an assisted living facility in Dover, subject to the administrative oversight of the Department of Health and Social Services, Division of Health Care Quality (hereinafter "DHCQ"). This matter originated after DHCQ identified fifteen (15) alleged deficiencies at Harmony's facility.[1] Harmony did not contest the deficiencies themselves but requested an administrative hearing to contest the penalty imposed for each deficiency. Ultimately, the hearing officer issued a written decision (hereinafter "the Decision") upholding imposition of the penalties for thirteen (13) of the fifteen (15) deficiencies.[2] This appeal followed.[3] For the reasons stated below, the Decision is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

DHCQ is statutorily required to conduct annual and complaint-based surveys of assisted living facilities to ensure compliance with federal and state statutes and regulations.[4] Between July 2, 2024, and July 8, 2024, DHCQ conducted an unannounced and complaint-based survey of Harmony's facility in Dover,

---

[1] *Harmony at Kent v. Delaware Department of Health and Social Services, Division of Health Care Quality*, N25A-02-001 DJB, Docket Item (hereinafter "D.I.") 1.
[2] D.I. 31.
[3] D.I. 1.
[4] D.I. 31; 29 *Del. C.* §7971(d).

Delaware.[5]  As a result of those surveys DHCQ identified a total of fifteen (15) violations of state regulatory requirements.  The following deficiencies were noted:

1.  Failure to provide required access to all employee and resident records.

2.  Failure to provide evidence of mandatory dementia specific training.

3. Failure to provide evidence of on-site review, conducted by a registered nurse, of the resident's medication regime if the resident self-administers medication.

4.  Failure to provide evidence of pre-hire tuberculosis testing.

5.  Failure to provide evidence of vaccination against influenza and pneumococcal pneumonia.

6.  Failure to complete full assessment of the resident and execute a service agreement prior to obtaining signed contracts.

7.  Failure to complete pre-admission uniform assessment instruction within thirty (30) days prior to admission.

8.  Failure to provide evidence of a physician's medical evaluation completed within thirty (30) days prior to admission.

9.  Failure to provide evidence that the uniform assessment instrument was completed thirty (30) days after admission.

10.  Failure to complete the service agreement in accordance with the timeframes outlined in regulation or provide evidence that the resident or family participated in the development of the agreement or was provided with a copy.

---

[5] *Id.*  Despite apparently conducting two separate inspections, the alleged deficiencies are seemingly combined into one collective survey from both July 2024 inspections.

11.  Failure to provide evidence that the service agreement contained the resident's personal attending physician's name, address, and telephone number.

12.  Failure to provide adequately trained and licensed staff to meet the needs of the residents.

13.  Failure to provide emergency preparedness education and written records of attendance at fire drills.

14.  Failure to report a fall which required periodic reassessment of resident's clinical status.

15.  Failure to ensure facility residents were free from neglect while residing at the facility.  The neglect included lack of appropriate assessment of resident after a fall resulting in a delay in medical care.[6]

On August 5, 2024, DHCQ notified Harmony via letter of the deficiencies and sent Harmony a copy of the survey.[7]  DHCQ's letter allowed Harmony:

> one opportunity to question cited deficiencies through an informal dispute resolution (IDR) process.  To be given such an opportunity, you must submit a written request which identifies the specific deficiencies being disputed and includes the specific issues relating to the cited deficient practice with which you disagree.  This written request must be received within the same ten-calendar day period that you have to submit your PoC…The IDR process is intended to be a continuous one from the time of survey until ten days after you have received the official state report.[8]

---

[6] *Id.* at pp. 4-5.
[7] D.I. 26, Exhibit 2
[8] D.I. 31, p. 3.

Harmony did not request the available IDR opportunity. On August 19, 2024, DHCQ notified Harmony of the $64,500 in Civil Money Penalties (hereinafter "CMPs") imposed in connection with the fifteen deficiencies.[9] In response, Harmony requested an administrative hearing to contest each CMP. On the day of the originally scheduled hearing, an issue was raised with respect to the proper scope. As a result, the officer requested briefing and the hearing was continued.[10] In a written decision dated October 21, 2024, the hearing officer limited the scope of the hearing so that Harmony was prohibited from challenging the validity of the deficiencies identified in the survey, specified that the focus of the hearing was whether DHCQ's CMP assessment was consistent with the six (6) factors enumerated in 16 *Del. C.* §1109(b) and otherwise appropriate, and allowed Harmony to call the Director of DHCQ and/or the investigating surveyor who documented the underlying deficiencies, but only to provide testimony relating to how the six (6) factors in 16 *Del. C.* §1109(b) were considered in assessing each deficiency.[11] The hearing spanned two days on November 20, 2024, and December 5, 2024, subject to the above guidelines.[12]

---

[9] D.I. 16.
[10] D.I. 12.
[11] D.I. 31, pp. 6-7.
[12] D.I. 17, 21.

## A. THE HEARING

At the hearing, testimony was heard from Corinna Getchell[13] and Cherry Verchick,[14] on behalf of DHCQ, and Marquia Tilghman,[15] Harmony's single witness.[16] Getchell addressed the deficiencies individually, confirmed DHCQ considered the 16 *Del. C.* §1109(b) factors in its assessment, and "stood behind the decision to assess the CMP" for each deficiency.[17] Getchell described DHCQ's process in assessing penalties and testified that the team will review each deficiency, determine the scope and severity of any deficiency, the history of the facility, and consider each factor at issue.[18] On cross-examination, Getchell acknowledged that, "if a surveyor provided inaccurate information that was not caught in the review process, the DHCQ might assess a CMP that was excessively harsh."[19]

DHCQ's second witness, Verchick, provided testimony related to the survey itself. Verchick "traveled to the facility under review, and sampled files of the [staff

---

[13] Director of DHCQ.

[14] DHCQ Assisted Living Compliance Surveyor.

[15] Harmony Healthcare Director.

[16] D.I. 8.

[17] *Id.* at pp. 6-11. Getchell's testimony determined that factors (4) and (5) of 16 *Del. C.* §1109(b) were inapplicable to any of the deficiencies.

[18] *Id.* at p. 12. Getchell also confirmed that, because of the COVID-19 pandemic, the number of annual surveys completed at senior living facilities decreased in 2020, 2021, and 2022. DHCQ did not issue any CMPs during those years. In 2023 DHCQ resumed the annual and complaint surveys.

[19] *Id.*

and] residents, and … interviewed the staff, residents, and family members regarding the annual survey, or any complaints that had been filed, or both."[20] Verchick investigated a complaint related to an incident where a Harmony resident fell at the facility. Following that investigation, Verchick incorporated her findings into a draft survey, to be reviewed by her team members at DHCQ. While she was the one who made all of the survey's factual findings, was not the one who made "scope or severity determinations."[21]

Tilghman, the Healthcare Director at Harmony, was the final witness to testify and was present during the July of 2024 survey.[22] She is the only registered nurse (hereinafter "RN") working at the facility.[23] Tilghman's testimony surrounded the issue regarding Harmony making records available for DHCQ review. Specifically, she testified to an issue retrieving records for Verchick, and how once a web browser issue resolved, the records were able to be reviewed.[24] Tilghman also described being present on the day Harmony's Maintenance Director, who was generally responsible for conducting and documenting fire drills, was murdered at the facility

---

[20] *Id.* at p. 25.
[21] *Id.*
[22] D.I. 22, p. 67.
[23] *Id.* at p. 72.
[24] *Id.* at p. 69.

on June 4, 2024.  This incident caused an issue with easily obtaining the records the Maintenance Director kept for DHCQ.[25]

## B. THE DECISION

The hearing officer issued the Decision on January 6, 2025, which found support for CMPs for thirteen (13) out of the fifteen (15) deficiencies.[26]  In reaching this outcome, the officer evaluated testimonies of all three witnesses.  The Decision then outlined whether each of the fifteen (15) deficiencies reflect the factors prescribed in 16. *Del. C.* §1109(b), and ultimately found the testimony demonstrated the deficiencies, except for numbers 3 and 12, appropriately considered the requisite factors.  However, the Decision instructed the amount of each CMP be reduced by 50% in compliance with statutory limitations in place before August 1, 2024.[27]  In doing so, the Decision agreed with Harmony's position that deficiency number three (3) was based upon a vague statement, which strongly suggests "DHCQ had not thoroughly considered the circumstances of the deficiency, as required by 16 Del. C.

---

[25] *Id.* at pp. 79-80.
[26] D.I. 8.  Deficiencies three (3) and twelve (12) were dismissed.
[27] This corresponds with the Decisions ruling that DHCQ inaccurately applied enhanced penalties based upon a statute issued on August 1, 2024, whereas these deficiencies were documented one month prior.

7

§1109(b)(1)."[28] The Decision also took issue with deficiency number twelve (12) for similarly failing to properly consider §1109(b)(1).[29]

Because Harmony raised several additional arguments at the hearing, the Decision also reviewed the issue of duplicative CMPs, disparate treatment, and retroactive application of enhanced penalties. The Decision disagreed with Harmony's first two additional arguments, because 16 *Del. C.* §1109 does not "require the DHCQ to treat each deficiency in isolation," nor does it include language "whereby the legislature instructed the DHCQ to use a standardized system in assessing CMPs…the highly subjective analysis employed by the DHCQ is permissible."[30]

However, the Decision agreed with Harmony's final argument that DHCQ retroactively applied the enhanced penalties. The Decision stated:

> While Senate Bill no. 216 is clearly focused on remedies, the want of specific authorization of retroactive application of the enhanced penalties brings the word 'may,' as opposed to 'will' or 'shall' into focus, which recommends the intent of the legislature was for the enhanced penalties to apply to deficiencies that occurred after the effective date of the legislation, i.e., August 1, 2024.[31]

This finding required all CMPs imposed on Harmony to be based upon the former, not current, statutory amounts.

---

[28] D.I. 8, p. 37.
[29] *Id.*
[30] *Id.* at pp. 35-36.
[31] *Id.* at p. 36.

8

On February 5, 2025, Harmony filed its notice of appeal.[32] The parties stipulated to, and the Court permitted, an extension of time to compile the extensive record in this case.[33] The record was timely filed on March 12, 2025.[34] Upon receipt of the record the Court issued a briefing schedule.[35] Accordingly, on April 2, 2025, Harmony filed its Opening Brief.[36] DHCQ filed its Answering Brief on April 22, 2025.[37] Harmony replied on May 6, 2025.[38] Oral argument was held on July 15, 2025.[39] Following argument, the Court requested additional decisional case law from the parties.[40] That was submitted on July 21, 2025.[41] This is the Court's decision.

## II.   STANDARD OF REVIEW

In an appeal from a decision from an administrative agency, the Court determines whether the hearing officer's decision is supported by substantial

---

[32] D.I. 1.
[33] D.I. 6 and 7.
[34] D.I. 8-27, 29.
[35] D.I. 28.
[36] D.I. 30.
[37] D.I. 31.
[38] D.I. 32.  This appeal was officially assigned to the presiding judge on May 7, 2025.
[39] D.I. 34.
[40] D.I. 36.
[41] D.I. 37.

evidence and free of legal error.[42]  Substantial evidence is "relevant evidence a

reasonable mind might accept to support the conclusion."[43]

> If the Superior Court reviewed the agency decision and received no
> evidence other than that presented to the administrative agency, we do
> not 'review the decision of the intermediate court,' rather, we directly
> examine the agency's decision."[44]

When the issue on appeal is whether the proper legal principles have been applied,

the Court's review is *de novo*.[45]  Further, "this Court repeatedly has emphasized the

limited extent of its appellate review of administrative determinations."[46]  Review

"is confined to ensuring that the hearing officer made no errors of law."[47]  The Court

reviews *de novo* the hearing officer's decision to determine whether the hearing

officer "erred in formulating or applying legal precepts."[48]

"This Court's role is to correct errors of law and to review the factual findings

of the [agency] below to determine if such findings are sufficiently supported by the

---

[42] *Lawson ex rel. Lawson v. Dept. of Health and Soc. Servs.*, 2004 WL 440405, at *2 (Del. Super. Feb. 25, 2004).

[43] *Delaware Dept. of Health and Soc. Servs. v. Jain*, 29, A.3d 207, 211 (Del. 2011) (citing *Tony Ashburn & Son, Inc. v. Kent County Reg'l Planning Comm'n*, 962 A.2d 235, 239 (Del. 2008)).

[44] *Jain*, 29, A.3d at 211 (quoting *Stoltz Mgmt. Co. v. Consumer Affairs Bd.*, 616 A.2d 1205, 1208 (Del. 1992).

[45] *Prunckun v. Delaware Dept. of Health and Soc. Servs.*, 201 A.3d 525, 540 (Del. 2019).

[46] *Pioneer House Carelink v. Div. of Long Term Care Resident's Prot.*, 2007 WL 4181670, at *5 (Del. Super. Nov. 5, 2007) (internal citations omitted).

[47] *Id*.

[48] *Id*.

record and are the product of an orderly and logical deductive process."[49]  "Because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings, it must uphold the decision of the [agency] unless the [agency] 'acts arbitrarily or capriciously,'"[50] or otherwise abuses its discretion.  An administrative board abuses its discretion "where it 'exceed[s] the bounds of reason in view of the circumstances' or 'ignore[s] recognized rules of law or practice [] so as to produce injustice.'"[51]

## III.  ANALYSIS

Harmony's appeal first disputes the DHCQ officer's instruction limiting the scope of the hearing addressing the CMP challenges.  According to Harmony, this instruction "improperly precluded [Harmony] from being fully heard regarding its challenge of the CMPs generally…The limitations imposed on Harmony's right to be heard constituted error and violated Title 16 of the Delaware Code, due process, and prior DHCQ administrative precedent."[52]

---

[49] *Bowers v. Delaware Real Estate Comm'n*, 2025 WL 275418, at *3 (Del. Super. Jan. 23, 2025) (citing *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972)).
[50] *Id; see also DeMarie v. Delaware Dept. of Transp.*, 2002 WL 1042088 (Del. Super. May 24, 2002).
[51] *Bowers*, 2025 WL 275418, at *3 (quoting *Cooper v. Del. Bd. of Nursing*, 2021 WL 754306, at *2 (Del. Super. Feb. 26, 2021)
[52] D.I. 30, p. 12.

In addition to challenging the hearing's scope, Harmony challenges some of the penalties imposed. Harmony alleges imposing the maximum penalty for deficiencies thirteen (13) and fifteen (15) were not supported by substantial evidence,[53] and asserts the penalties imposed for several deficiencies[54] were arbitrary, excessively harsh, and constitute disparate treatment of Harmony.[55] Each issue is addressed in turn below.

## A. THE HEARING'S SCOPE WAS PROPERLY LIMITED.

Under 16 *Del. C.* §1114, Harmony is entitled to "due process protections of notice and opportunity to be heard…to appeal…the imposition of remedies for noncompliance."[56] Harmony asserts the DHCQ's ruling that limited the evidentiary hearing's scope prohibited Harmony "from challenging the validity of the deficiencies identified in the survey," which violated its due process rights. Harmony argues the surveyor "submitted incorrect factual information regarding the nature, circumstances, extent, and gravity of the neglect deficiency," and argues error in the fact that it was "completely precluded from examination" of this fact, given the limited scope of the hearing. Further, Harmony argues it was "largely precluded

---

[53] *Id.* at p. 28.
[54] For deficiencies 4, 5, 6, 7, 8, 10, 11, and 15.
[55] D.I. 30, p. 32.
[56] 16 *Del. C.* §1114.

from questioning Director Getchell regarding her review and interpretation of the neglect deficiency."[57]

Harmony was, however, permitted to elicit testimony about whether DHCQ's deficiencies considered the mandatory factors enumerated in 16 *Del. C.* §1109(b). Before imposing a CMP, 16 *Del. C.* §1109(b) mandates DHCQ to evaluate the following:

> (1) the seriousness of the violation, including the nature, circumstances, extent, and gravity of the violation and the hazard or potential hazard, created by the violation to the health or safety of a resident or residents; (2) the history of the violations committed by the person or person's affiliate, employee, or controlling person; (3) the efforts made by the facility to correct the violation; (4) the culpability of the person who committed the violation; (5) a misrepresentation made to the Department or to another person regarding any of the following: (a) the quality of services provided by the facility; (b) the compliance history of the facility; and (c) the identity of an owner or controlling person in the facility; and (6) any other matter that affects the health, safety, or welfare of a resident.[58]

Harmony alleges limiting the hearing to review of the §1109(b) factors prevented it from eliciting testimony about an alleged factual and interpretive error in the deficiency citation for neglect and limiting testimony.[59]

---

[57] D.I. 30.
[58] 16 *Del. C.* §1109(b)(1)-(6).
[59] D.I. 30, p. 14.

Importantly, Harmony, admittedly, did not elect to challenge the findings of deficiencies. Harmony was given notice of the deficiency allegations and a time period in which to dispute them through the IDR process. This was not exhausted. With respect to Harmony's dispute regarding the ruling that limited the scope of the hearing, this Court's review is limited; nothing in the record demonstrates an abuse of discretion.

The DHCQ officer considered briefing on this issue prior to limiting the scope of the hearing.[60] While, the Decision acknowledged that past CMP hearings have "not precluded testimony by one or more of the surveyors who undertook the review of a given facility,"[61] Harmony was not completely precluded for exploring the underlying facts of the deficiencies. The ruling allowed Harmony to "call the Director of the DHCQ and/or the investigating surveyor who identified and documented the underlying deficiencies cited in the Survey."[62] Consistent with 16 *Del. C.* §1109(1), the ruling also instructed Harmony to explore the "nature, circumstances, extent, and gravity" of the deficiencies. After careful review of the

---

[60] *Id.*
[61] *Id.* Harmony references Brookdale Dover v. DHCQ, DHCQ Appeal No. _ _ (June 12, 2019) and Paramount Senior Living v. DHCQ, DHCQ Appeal No. _ _ (October 25, 2023). These are attached to D.I. 27 as part of Exhibit 18, Part 2. They are also discussed in the briefing on the scope of the hearing issue.
[62] D.I. 12.

14

transcripts, any sustained objections to Harmony's questioning was when it ventured into addressing the validity of the deficiencies, as opposed to the gravity of them.

Harmony continuously attempted to elicit testimony regarding the accuracy of the information reported in the survey, and therefore the validity of the deficiency, throughout the hearing. Despite the prior limiting instruction, the DHCQ officer permitted testimony regarding the accuracy of information contained in the survey,[63] and allowed, from two separate witnesses, testimony regarding the survey's accuracy. The officer was lenient in allowing such testimony given that it already decided "the violations were deemed to be correct when the facility didn't challenge it"[64] when declining the IDR process. Harmony's waiver of IDR waives challenges to the deficiencies themselves.[65]

Harmony argues 16 *Del. C.* §1114 does not, on its face, indicate that the imposition of remedies may be limited in any way, and that the plain language of §1114 treats an "appeal of survey deficiencies" and the appeal of "imposition of remedies" as separate rights.[66] Assuming, *arguendo*, that Harmony's assertion is true, that does not negate the fact that Harmony failed to pursue its desired appeal of the deficiencies' validity. DHCQ provided Harmony with information regarding the

---

[63] D.I. 22, p. 62.
[64] D.I. 17, p. 81.
[65] *Christiana Town Ctr., LLC v. New Castle Cnty.*, 865 A.2d 521 (Table) (Del. 2004) (ruling that due process rights can be knowingly, voluntarily, and intelligently made)
[66] 16 *Del. C.* §1114.

IDR policy and appeal process.[67] The hearing officer correctly deemed this a waiver of the right to appeal the validity of each deficiency.[68]

Given that Harmony still appealed the CMPs, which allowed Harmony the opportunity to explore the "nature, circumstances, extent, and gravity" of the deficiencies, the Court will not reverse the DHCQ's instruction limiting the hearing's scope. Not only does challenging the CMPs in part address the underlying deficiencies, but the DHCQ officer even permitted testimony outside the scope of 16 *Del. C.* §1109(b)(1) when Getchell and Verchick testified to the survey's accuracy, and during Harmony's broad challenges to every CMP during the two-day hearing. The officer indicated the survey's accuracy would be considered in the written decision.[69] Sufficient evidence permitted this consideration and the finding that the record failed to demonstrate that the DHCQ acted arbitrarily, capriciously, or abused its discretion such that this Court should overturn the limiting decision. As a result, there was no due process violation and decision limiting the scope of the hearing.

---

[67] D.I. 31, p. 3.

[68] D.I. 17, p. 81.

[69] D.I. 21. At the November 20, 2024 hearing it was decided that a second session was necessary. The additional hearing occurred on December 5, 2024.

## B. THE MAXIMUM PENALTY IMPOSED FOR DEFICIENCY THIRTEEN WAS BASED UPON SUBSTANTIAL EVIDENCE.

Harmony argues the maximum penalty imposed for deficiency thirteen (13) was not based on substantial evidence. Deficiency thirteen (13) relates Harmony's fire drill and emergency procedures. 16 *Del. Admin. C.* §3225-18.2 requires "[r]egular fire drills shall be held at least quarterly on each shift. Written records shall be kept of attendance at such drills."[70] Getchell testified there was "[n]o written evidence of who attended [disaster drills,]" which violates §3225-18.2. Not only is the lack of documentation itself a violation, but without that evidence, Getchell testified they could not determine that the facility was routinely compliant in administering drills despite the two documented fire drills in spring of 2024.[71]

The testimony also shows Harmony violated 16. *Del. Admin. C.* §3225-18.4, which provides "[t]he staff on all shifts shall be trained on emergency and evacuation plans. Evacuation routes shall be posted in a conspicuous place at each nursing station."[72] Getchell testified that four of six employee records lacked documentation of mandated training.[73] Further, Getchell stated compliance with 18.4 requires more than just having the drills, education is also required to comply with 18.4 "there has

---

[70] 16 *Del. Admin. C.* §3225.
[71] D.I. 17, p. 38.
[72] 16. *Del. Admin. C.* §3225.
[73] D.I. 17, p. 39.

to be…the initial education about what to do, the drill is then just practicing what to do."[74] Further, Getchell explained, "the rules and regulations do require emergency preparedness education. Without that documentation, there's no way to confirm that that occurred," so Harmony was found in violation for failing to provide proper emergency preparedness education.[75]

On appeal Harmony, as it did below, argued excusal for noncompliance because the employee responsible for conducting and documenting disaster drills was tragically murdered at Harmony's facility. The DHCQ considered these circumstances in its decision:

> [w]hile the DHCQ acknowledged the murder of the Director of Maintenance, who, it was presumed, was responsible for maintaining the attendance records of the fire drills, the DHCQ convincingly argued, notwithstanding his death, the Facility had the duty to provide the missing records. Moreover, the DHCQ argued the Facility was out-of-compliance long before the fire drills that were held in the spring of 2024, but acknowledged the regulations did not specify the necessity of maintaining attendance records. The DHCQ confirmed this was not a repeat deficiency, and stated, when considering imposition of a CMP in this matter, the DHCQ considered the factors of 16 Del. C. §1109(b), and the DHCQ stood behind the decision to assess the CMP.[76]

Undoubtedly a tragedy occurred. However, it is outside the scope of this Court's review to weigh the evidence.[77] Instead, the Court is limited to review whether the

---

[74] D.I. 17, p.171.
[75] D.I. 17, p. 170.
[76] D.I. 8, p. 34. (I think the murder evidences a need for more emergency training…)
[77] *Bowers*, 2025 WL 275418, at *3 (Del. Super. Jan. 23, 2025); *see also DeMarie*, 2002 WL 1042088 ("[i]f there is substantial evidence and no mistake in law, the

DHCQ's decision was based upon substantial evidence.[78]  It was.  Getchell's testimony constitutes "relevant evidence a reasonable mind might accept to support the conclusion" that Harmony failed to administer or document regular fire drills and the associated education.[79]  Getchell described how each of the §1109(b) factors were considered in calculating each CMP, including number thirteen (13).[80]  Therefore, the DHCQ had substantial evidence to justify imposing the maximum penalty and the decision regarding deficiency thirteen (13) is upheld.

### C. THE CMPS IMPOSED FOR DEFICIENCIES 4, 5, 6, 7, 8, 10, 11, AND 15 WERE SUPPORTED BY SUBSTANTIAL EVIDENCE, NOT ARBITRARY AND DO NOT CONSTITUTE DISPARATE TREATMENT

The DHCQ must consider six factors enumerated in 16 *Del. C.* §1109(b) before imposing a monetary penalty for a violation.  "The statute gives the [DHCQ] substantial discretion in assessing penalties upon a finding of violation and in determining the amount of such penalties.  The statute simply requires that the [DCHQ] 'consider' the six factors enumerated therein…The statute prescribes no further analysis."[81]  In the Decision, the hearing officer individually addressed each deficiency and described how the §1109(b) factors played a role in the associated

---

Board's findings will be affirmed.  This Court may not weigh the evidence, determine credibility, or make its own factual findings").
[78] *Id.*
[79] *Jain*, 29, A.3d at 211 (citing *Tony Ashburn*, 962 A.2d at 239).
[80] D.I. 17, pp. 61-64.
[81] *Pioneer House Carelink*, 2007 WL 4181670, at *6.

CMP.[82]  Getchell's testimony described the consideration of the §1109(b) factors when imposing each CMP.[83]  Given that no analysis beyond *considering* the factors is required, the Court "will not disturb the legal grounds upon which the hearing officer based his decision."[84]

Nor will the Court disrupt the hearing officer's decision related to Harmony's alleged disparate treatment.  The Decision noted that the statutory analysis is individualized, and "highly nuanced" for each case.  These are fact specific determinations, and that "the Code does not require the DHCQ to employ [any standardized point system], the highly subjective analysis employed by the DHCQ is permissible, and the Facility's argument is therefore found to be unconvincing.[85]

The Delaware Supreme Court has addressed a need for consistency in penalties, however, and stated:

> [f]or notice to be adequate, it must give reasonable persons clarity as to what conduct is proscribed.  To that end, consistency is the key.  Basing violations of Regulations on expert testimony and an *ad hoc* basis would result in a patchwork of definitions of the required standard of care, with variations because of differing sets of facts and experts' idiosyncrasies.[86]

---

[82] *See* D.I. 8.
[83] *See* D.I. 17.
[84] *Pioneer House Carelink*, 2007 WL 4181670, at *6.
[85] D.I. 8, p. 36.
[86] *Delaware Bd. of Med. Licensure & Discipline v. Grossinger*, 224 A.3d 939, 587 (Del. 2020).

The Superior Court had occasion to analyze the interplay between Supreme Court precedent emphasizing consistency with the fact that:

> it is axiomatic that agency case decisions must consider the individual circumstances of each case. Thus, there is a need in administrative law to balance (1) the requirement for consistency in penalties, with (2) the need that an agency consider the individual circumstances of each case. Here, the General Assembly entrusted that balance to DREC.[87]

There is nothing in the record that supports that any *ad hoc* determinations were made in this case. The General Assembly similarly entrusted the DHCQ to balance the need for consistency in penalties with the individuality of each case when considering the necessary §1109(b) factors. The DHCQ is not required to use a standardized system in assessing CMPs, and all the CMPs in this matter fell within the appropriate ranges laid out in §§1109(a) and (c). Thus, the DHCQ did not abuse its discretion, nor did Harmony suffer disparate treating, when the DHCQ did not place a controlling weight on consistency "as long as it considers the individual circumstances of each case and bases its decision on substantial evidence."[88]

The record indicates the §1109(b) factors were considered when issuing a CMP for each deficiency.[89] The Decision delineates how the §1109(b) factors relate

---

[87] *In re Delaware Real Estate Comm'n*, 2024 WL 4888922, at *14 (Del. Super. Nov. 25, 2024).

[88] *Id.* ("[a]n agency does not abuse its discretion if it chooses to place controlling weight on consistency as long as it considers the individual circumstances of each case and basis its decision on substantial evidence").

[89] *See* D.I. 17.

to each deficiency and specifies "[t]he defense elicited from the DHCQ a detailed review of each of the fifteen (15) deficiencies…and also asked the DHCQ to explain how the factors of 16. Del. C. §1109(b) were considered when assessing the deficiencies for a potential CMP."[90]  The hearing officer weighed that extensive testimony in issuing the Decision.  Nothing in the record supports the contention of disproportionate treatment or any disparity.  The Decision was based upon substantial evidence, and it is inappropriate for the Court to engage in any further analysis.[91]

## IV.    CONCLUSION

The Decision of the DHCQ is based upon substantial evidence showing the §1109(b) factors were considered when assessing the challenged CMPs.  Further, the limitation on the scope of the hearing did not deprive Harmony of due process, as they waived any challenge to the deficiencies themselves and were afforded great leniency in challenging the CMPs.  All of which were taken into consideration by the hearing officer and evidenced by the fact that not all requested CMPs were imposed.

---

[90] D.I. 8, p. 30.

[91] *Bowers*, 2025 WL 275418, at *3; *see also DeMarie*, 2002 WL 1042088 ("[i]f there is substantial evidence and no mistake in law, the Board's findings will be affirmed. This Court may not weigh the evidence, determine credibility, or make its own factual findings").

The Decision of the DHCQ is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge